BURLINGTON NORTHERN RAILROAD CO. *v.*
OKLAHOMA TAX COMMISSION ET AL.

No. 86–337.   Argued March 25, 1987—Decided April 28, 1987

MARSHALL, J., delivered the opinion for a unanimous Court.

*Betty Jo Christian* argued the cause for petitioner. With her on the briefs were *Timothy M. Walsh, Steven Reed, Jerald S. Howe, Jr.,* and *Jeffrey D. Lerner.*

*Albert G. Lauber, Jr.,* argued the cause for the United States as *amicus curiae* urging reversal. With him on the

brief were *Solicitor General Fried, Assistant Attorney General Willard, Richard G. Taranto, Anthony J. Steinmeyer, Jim J. Marquez,* and *John M. Mason.*

*David W. Lee,* Assistant Attorney General of Oklahoma, argued the cause for respondents. With him on the brief for respondents State Board of Equalization of Oklahoma et al. were *Robert H. Henry,* Attorney General, and *Neal Leader,* Assistant Attorney General. *J. Lawrence Blankenship* and *Donna E. Cox* filed a brief for respondents Oklahoma Tax Commission et al.*

JUSTICE MARSHALL delivered the opinion of the Court.

The issue presented by this case is whether § 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U. S. C. § 11503, permits review by federal courts of alleged overvaluation of railroad property by state taxation authorities.

---

*Briefs of *amici curiae* urging reversal were filed for the American Bus Association by *Charles A. Webb* and *Theodore C. Knappen;* and for the Association of American Railroads by *Kenneth P. Kolson.*

*Jerome B. Falk, Jr.,* and *Steven L. Mayer* filed a brief for Fifty California Counties as *amici curiae* urging affirmance.

Briefs of *amici curiae* were filed for the State of California et al. by *John K. Van de Kamp,* Attorney General of California, *Timothy G. Laddish,* Supervising Deputy Attorney General, and *Julian O. Standen,* and by the Attorneys General for their respective States as follows: *Duane Woodard* of Colorado, *Robert A. Butterworth* of Florida, *Thomas J. Miller* of Iowa, *Hubert H. Humphrey III* of Minnesota, *Mike Greeley* of Montana, *Robert M. Spire* of Nebraska, *Brian McKay* of Nevada, *Lacy H. Thornburg* of North Carolina, *Dave Frohnmayer* of Oregon, *Travis Medlock* of South Carolina, *Roger A. Tellinghuisen* of South Dakota, *W. J. Michael Cody* of Tennessee, *Mary Sue Terry* of Virginia, *Kenneth O. Eikenberry* of Washington, and *Joseph B. Meyer* of Wyoming; and for the State of Kansas et al. by *Robert T. Stephan,* Attorney General of Kansas, and *Carol B. Bonebrake,* and by the Attorneys General for their respective States as follows: *Robert K. Corbin* of Arizona, *Michael J. Bowers* of Georgia, *Jim Jones* of Idaho, *William L. Webster* of Missouri, *Hal Stratton* of New Mexico, *David L. Wilkinson* of Utah, and *Charles G. Brown* of West Virginia.

## I

In 1976, after 15 years of intermittent and inconclusive legislative action, Congress passed the Railroad Revitalization and Regulatory Reform Act, Pub. L. 94–210, 90 Stat. 31 (Act). The Act's purpose, as stated in the congressional declaration of policy, was "to provide the means to rehabilitate and maintain the physical facilities, improve the operations and structure, and restore the financial stability of the railway system of the United States." § 101(a). Among the means chosen by Congress to fulfill these objectives, particularly the goal of furthering railroad financial stability, was a prohibition on discriminatory state taxation of railroad property. After an extended period of congressional investigation, Congress concluded that "railroads are over-taxed by at least $50 million each year." H. R. Rep. No. 94–725, p. 78 (1975).

Congress' solution to the problem of discriminatory state taxation of railroads was embodied in § 306 of the Act, currently codified at 49 U. S. C. § 11503.[1] In broad terms, Congress declared in § 306(b) that assessment ratios or taxation rates imposed on railroad property which differ significantly from the ratios or rates imposed on other commercial and industrial property are prohibited as burdens on interstate commerce.[2] Section 306(c) declared an exception from the

---

[1] The language of the original § 306, first codified at 49 U. S. C. § 26c (1976 ed.), was slightly altered when in 1978 the provision was recodified at 49 U. S. C. § 11503. See Act of Oct. 17, 1978, Pub. L. 95–473, 92 Stat. 1337 *et seq.* These changes "may not be construed as making a substantive change in the laws replaced." § 3(a), 92 Stat. 1466. For convenience, further references to the statute are to the text of 49 U. S. C. § 11503.

[2] Title 49 U. S. C. § 11503(b) provides in relevant part:

"The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

"(1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the

provisions of the Tax Injunction Act, 28 U. S. C. § 1341, allowing railroads to challenge discriminatory taxation in federal district courts.[3]   States were given a 3-year grace period, until February 1979, to bring their property taxation systems into compliance with the statutory requirements.   § 306(2)(b), 90 Stat. 54; see Act of Oct. 17, 1978, Pub. L. 95–473, 92 Stat. 1466.

The present action was filed by petitioner Burlington Northern Railroad in the United States District Court for the Western District of Oklahoma on March 3, 1983.   The complaint alleged that respondents, the Oklahoma Tax Commis-

---

same assessment jurisdiction has to the true market value of the other commercial and industrial property.

"(2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection. . . ."

[3] Title 49 U. S. C. § 11503(c) provides:

"Notwithstanding section 1341 of title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section.   Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction.   The burden of proof in determining assessed value and true market value is governed by State law.   If the ratio of the assessed value of other commercial and industrial property in the assessment jurisdiction to the true market value of all other commercial and industrial property cannot be determined to the satisfaction of the district court through the random-sampling method known as a sales assessment ratio study (to be carried out under statistical principles applicable to such a study), the court shall find, as a violation of this section—

"(1) an assessment of the rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the assessed value of all other property subject to a property tax levy in the assessment jurisdiction has to the true market value of all other commercial and industrial property; and

"(2) the collection of an ad valorem property tax on the rail transportation property at a tax rate that exceeds the tax ratio rate applicable to taxable property in the taxing district."

sion and State Board of Equalization and their members, had discriminated against petitioner in the assessment of state property taxes for the 1982 tax year.[4] In particular, petitioner alleged that respondents had overvalued petitioner's property.

The determination of railroad property tax liability in Oklahoma proceeds in several discrete stages. The first step is to ascertain the amount of property subject to tax. The Oklahoma Tax Commission follows the procedure of determining the value of the entire railroad, and then allocating a portion of that total system value to Oklahoma. The value of the railroad is determined by calculating a weighted average of original cost of assets and capitalized net operating income. Response to Complaint ¶ 14, App. 16. A similar procedure for determining the value of railroad property subject to tax by valuing the total system and apportioning that value to the taxing jurisdiction is employed in almost all jurisdictions which apply property taxes to railroads. See J. Runke & A. Finder, State Taxation of Railroads and Tax Relief Programs 23–32 (1977). In allocating a proportion of petitioner's property to Oklahoma, the Tax Commission took the position in 1982 that 3.53% of petitioner's property was taxable in the State, an allocation which petitioner does not dispute. Brief for Petitioner 9, n. 14.

Oklahoma does not assess property at full market value for tax purposes. See Okla. Const., Art. 10, § 8 (assessment not to exceed 35% of market value). Therefore, the second step in the determination of tax liability is the application to the true market valuation of the assessment ratio. In 1982, the State assessed the taxable value of petitioner's property at 10.87% of true market value. Petitioner does not dispute that this was the same assessment ratio employed with re-

---

[4] The Oklahoma Tax Commission submits each year a recommendation as to the assessment of railroad property to the State Board of Equalization, which makes the final assessment decision. Response to Complaint ¶ 14, App. 15–16.

spect to all other commercial and industrial property in the State. Brief for Petitioner 9, n. 14.

Petitioner's claim of discriminatory taxation was thus based solely upon the State's original determination of the market value of petitioner's entire railroad system. The 1982 assessment by the State determined that the "true" market value of the railroad was approximately $3.6 billion. Response to Complaint ¶ 28, App. 22. Petitioner contended that fair application of respondents' own valuation methodology would have resulted in a determination that the "true" market value of the railroad was approximately $1.5 billion. Complaint ¶ 34, App. to Pet for Cert. 31a.

The District Court, following the decision of the United States Court of Appeals for the Tenth Circuit in *Burlington Northern R. Co.* v. *Lennen,* 715 F. 2d 494 (1983), cert. denied, 467 U. S. 1230 (1984), held that § 11503 does not permit the exercise of federal jurisdiction to review claims of state taxation based upon alleged overvaluation of railroad property, unless the railroad "'can make a strong showing of purposeful overvaluation with discriminatory intent.'" CIV 83–419–R (WD Okla. Jan. 8, 1985), App. to Pet. for Cert. 10a (quoting *Burlington Northern R. Co.* v. *Lennen, supra,* at 498). The District Court found that no such showing had been made, and dismissed "for lack of subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). App. to Pet. for Cert. 17a. The Court of Appeals affirmed in an unpublished opinion. No. 85–1657 (CA10 May 2, 1986). We granted certiorari, 479 U. S. 913 (1986), to resolve a conflict between the position of the Tenth Circuit and that of the Eighth Circuit in *Burlington Northern R. Co.* v. *Bair,* 766 F. 2d 1222 (1985). We now reverse.

## II

There is some difference of opinion between respondents and the Court of Appeals as to the proper interpretation of § 11503. The Court of Appeals, following its decision

in *Burlington Northern R. Co.* v. *Lennen, supra,* held that district courts may not review claims of discriminatory taxation based upon overvaluation of railroad property unless the plaintiff first makes a preliminary showing of intentional discrimination. Respondents suggest that § 11503 *never* permits district court review of such claims. Brief for Respondents State Board of Equalization et al. 9; Tr. of Oral Arg. 41, 52–53. Our reading of the statute convinces us that both positions are untenable.

The parties have canvassed at length the 15-year legislative history of the Act, and of the protection against discriminatory state taxation which became § 11503. We find the results of that investigation inconclusive and irrelevant. Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but "[i]n the absence of a 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must ordinarily be regarded as conclusive.'" *United States* v. *James,* 478 U. S. 597, 606 (1986) (quoting *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.,* 447 U. S. 102, 108 (1980)). Unless exceptional circumstances dictate otherwise, "[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete." *Rubin* v. *United States,* 449 U. S. 424, 430 (1981).

In the present case, the language of § 11503 plainly declares the congressional purpose. Subsection (b)(1) forbids any State to "assess rail transportation property at a value that has a higher ratio to the true market value . . . than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property." It is clear from this language that in order to compare the actual assessment ratios, it is necessary to determine what the "true market values" are. Respondents take the position that the first occurrence of the phrase "true market value" in § 11503(b)(1) should be read as "state determined market value," for they contend in essence that what-

ever the State determines the value of the railroad to be, the resulting assessment ratio is not subject to further judicial scrutiny in the federal courts.

The obstacle to this position is the language of § 11503(c), which states that "[t]he burden of proof in determining assessed value and true market value is governed by State law." It would be inconsistent to allocate the burden of proof as to an issue which could not be litigated in federal court in the first place. Respondents attempt to meet this argument by pointing to the remainder of subsection (c), which specifically instructs the district courts as to methods for proving the assessment ratio for other commercial and industrial property, either through statistical sampling of the assessed value and sale value of individual properties, or through the determination of assessed value and true market value of "all other commercial and industrial property" "in the assessment jurisdiction." § 11503(c)(1). Respondents contend that these instructions as to the determination of assessment ratios for other commercial and industrial property show that it is the burden of proof on these issues only which is allocated in subsection (c), and that it is only these issues which may be the subject of proof before the district court.

In fact, however, the language of subsection (c) leads to the opposite conclusion. The general statement that assessed value and true market value are subjects for judicial inquiry, and are to be proved under burdens allocated by state law, is followed by a specific instruction as to how two of those issues are to be addressed. These are not, by their placement or meaning, words of limitation on the preceding general statement, but rather a particular grant of authority to district courts to use statistical methods for establishing the assessed and market values of "other commercial and industrial property" where such methods will result in proof "to the satisfaction of the district court." Congress has said that the value of one kind of property may, in the court's discre-

tion, be proved by particular means; this raises no implication whatever that the value of another kind of property may not be proved at all.[5] Respondents' position depends upon the addition of words to a statutory provision which is complete as it stands. Adoption of their view would require amendment rather than construction of the statute, and it must be rejected here.

The position taken by the Court of Appeals is also unsatisfactory. The court found that some disputes as to state valuation of railroad property may be the subject of a federal claim under § 11503, but only where the plaintiff alleges, and makes a preliminary showing, that the overvaluation results from discriminatory intent. App. to Pet. for Cert. 10a; *Burlington Northern R. Co.* v. *Lennen*, 715 F. 2d, at 498. The statute provides no support for this interpretation. Subsection (b) speaks only in terms of "acts" which "unreasonably burden and discriminate against interstate commerce"; nowhere does it refer to the intent of the actor. The Court of Appeals does not dispute that the other acts prohibited by the plain language of § 11503(b), such as the use of facially discriminatory disparities in assessment ratio or the systematic undervaluation of other commercial and industrial property, are not subject to an intent requirement. It does not explain how the same sentence can be interpreted in two such strikingly different senses depending upon whether the railroad's challenge is to the State's undervaluation of other

---

[5] Petitioner has not challenged the valuation methodology employed by respondents in determining the value of petitioner's railroad; petitioner's sole challenge is to the application of that methodology, particularly the State's evaluation of the cost of capital and the State's refusal to make deductions for property which petitioner claims is obsolete. Tr. of Oral Arg. 15–16. This case therefore does not present the question whether a railroad may, in an action under § 11503, challenge in the district court the appropriateness of the accounting methods by which the State determined the railroad's value, or is instead restricted to challenging the factual determinations to which the State's preferred accounting methods were applied. Accordingly we express no view on that issue.

commercial and industrial property or to the State's over-valuation of railroad property.

Further support for our conclusion is found in § 11503(c), which provides that "[r]elief may be granted under this sub-section only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent" the assessment ratio for other commercial and industrial property. Such a provision makes sense as a prohibition on the litigation of *de minimis* disparate-impact claims in the federal courts, but it is hard to reconcile with the proposition that Congress intended to reach only claims of intentional discrimination by overvaluation. If intentional discrimination is the evil to be remedied, did Congress propose to permit the States to discriminate at will, so long as they unfairly retained only one nickel out of every dollar? The Court of Appeals' suggested interpolation of an intent requirement draws no support from the statute's language and is inconsistent with its expressed purpose.

### III

Respondents contend that injunctive relief against state taxation offends the principles of comity. Brief for Respondents State Board of Equalization et al. 41–42. The Court of Appeals found that its restrictions on valuation actions under § 11503 are necessary in order to avoid "an inevitable clog of federal dockets" and "unreasonable delay of the state tax collection process." App. to Pet. for Cert. 10a. These are policy considerations which may have weighed heavily with legislators who considered the Act and its predecessors. It should go without saying that we are not free to reconsider them now. The decision of the Court of Appeals is

*Reversed.*