**UNITED STATES of America**

v.

**Elwood WILLIARD**

**Crim. A. No. 88–00255–01.**

United States District Court,
E.D. Pennsylvania.

Oct. 18, 1989.

Marsha A. McClellan, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

John Rogers Carroll, Philadelphia, Pa., for defendant.

## VERDICT AND OPINION

DuBOIS, District Judge.

### VERDICT

I find Elwood Williard guilty as charged under an Indictment of one count of failure to surrender for service of sentence pursuant to a court order in violation of the Bail Reform Act, 18 U.S.C. § 3146(a)(2).

### OPINION

INTRODUCTION:

On February 17, 1987, Williard was indicted by a Federal Grand Jury in Criminal Action No. 87–00083 on charges related to misapplication of bank funds, and a bench warrant was issued. He was arraigned on February 25, 1987, and was admitted to bail by executing a bond in the amount of $25,000.00 the following day. On July 22, 1987, at the conclusion of trial, the jury

returned a verdict of guilty on three counts, and bail was continued.

On September 25, 1987, Williard was sentenced to serve two concurrent three year sentences of confinement, followed by a five year term of probation. During the probation period he was prohibited from engaging in any solely owned business ventures.

At the sentencing hearing, after sentence was imposed, defense counsel asked that Williard be released on bail pursuant to 18 U.S.C. § 3143(a) [1] pending execution of sentence on the grounds that it was unlikely that Williard would flee and that he did not pose a danger to the community. To support this argument, counsel stated that Williard had been released on bail following his arrest and had never failed to appear and that Williard was not a violent person. The government did not object and offered no rebuttal evidence. The sentencing judge then expressly found that there was no risk of flight although he made no express findings about danger to the community.

The defense also requested that Williard be released pursuant to 18 U.S.C. § 3143(b) [2] pending appeal, and the government opposed. There followed an argument on the question of whether an appeal by Williard would raise a substantial question of law or fact likely to result in reversal or a new trial. At the conclusion of that argument, the trial judge stated, "I will grant the government's motion and revoke bail. I will give the defendant two weeks to wind up his affairs. He will report to prison in two weeks.... I will suspend execution of this sentence until then ..." (Sentencing Transcript of 9/25/88 at 45). The judge then ordered the defendant to report to a place of confinement, to be determined, on October 9, 1987, at 12:00 noon.

After the sentencing, Williard was brought to the United States Marshal's Office for processing for his voluntary surrender. At that time he was asked for two telephone numbers where he could be reached while he was free on bail so that the Marshal's Office could inform him of the designated institution at which he was to surrender. One of the numbers which he provided was his home telephone number; the other was that of his wife's place of employment.

On October 7, 1987, an assistant Marshal, Michael Mazelt, attempted to reach Williard at the telephone numbers he had supplied. There was no answer at Williard's home number. At the other number, a woman who identified herself as Williard's wife answered and stated that the defendant was not there. The assistant marshal informed her that Williard was to turn himself in at the Allenwood Federal Prison Camp on October 9, 1987, and asked her to so advise him. Despite this, no one named Elwood Williard was admitted to Allenwood Federal Prison Camp on October 9, 1987, or thereafter.

---

1. Specifically § 3143(a) states:
   **(a) Release or detention pending sentence—** The judicial officer shall order that a person who has been found guilty of an offense and who is waiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

2. The text of § 3143(b) reads as follows:
   **(b) Release or detention pending appeal by the defendant—** The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
   (1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released pursuant to section 3142(b) or (c); and
   (2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.
   If the judicial officer makes such findings, he shall order the release of the person in accordance with the provisions of section 3142(b) or (c).

On June 14, 1988, Williard was indicted under 18 U.S.C. § 3146(a)(2) [3] for his failure to report for service of sentence after having been released on personal recognizance. A bench warrant for his arrest was issued, and he was apprehended at his home on June 15, 1988.

The non-jury trial in this case began on December 7, 1988. At the close of the Government's case the defendant filed a Motion for Judgment of Acquittal under Fed.R.Crim.P. 29(a). The Motion was based on the theory that Williard had not been released from custody under Chapter 207 of 18 U.S.C. (18 U.S.C. § 3141 et seq.) and that he therefore was a fugitive at the time he was to report, not a bail jumper who could be prosecuted under § 3146(a)(2).

On December 7, 1988, immediately after the Motion for Judgment of Acquittal was filed, the trial was recessed until December 14, 1988, to allow the Government time to respond to the Motion. The trial resumed on December 14th, with an argument on the Motion. The motion was denied, the defense introduced no evidence, and the trial concluded with closing arguments. The case was then taken under advisement.

DISCUSSION AND FINDINGS:

There are three elements to an offense under 18 U.S.C. § 3146(a)(2):

1. That the defendant was released from custody pursuant to the Bail Reform Act, 18 U.S.C., Chapter 207;

2. That the defendant failed to surrender for service of his sentence; and,

3. That the defendant did so knowingly, in that he knew that he was required to surrender at a certain time for service of a sentence pursuant to a court order.

FIRST ELEMENT:

The first element of the offense of bail jumping, that the defendant be released from custody pursuant to the Bail Reform Act, 18 U.S.C., Chapter 207, is the element that defendant challenges in his Motion for Judgment of Acquittal. Defendant argues that he cannot be found guilty of violating the Bail Reform Act because he was not "released under this chapter." 18 U.S.C. § 3146(a). This contention is without merit.

The transcript of the sentencing hearing discloses that the judge released Williard under the Bail Reform Act. Although the statements of the sentencing judge were not entirely clear, the transcript of the sentencing hearing, when read in its entirety, leaves little doubt that Williard was released on his personal recognizance pursuant to § 3143(a) pending execution of his sentence.

First, the sentencing judge went through the analysis required by the Bail Reform Act. The Act mandates that before a judicial officer releases a defendant on bail pending execution of sentence, he must find by clear and convincing evidence that the defendant is unlikely to flee or pose a significant risk of danger to the community. 18 U.S.C. § 3143(a).[4] At the sentencing hearing in this case, defense counsel proffered that Williard was not likely to flee and did not pose a danger to the community. In support of that position he cited Williard's conduct while on bail and the fact that Williard was not a violent person. After hearing this proffer, the trial judge made an explicit finding that it was unlikely that Williard would flee.

---

**3.** The Indictment in this case reads as follows:
THE GRAND JURY CHARGES THAT:
On or about October 9, 1987, at Philadelphia, in the Eastern District of Pennsylvania, the defendant,
ELWOOD WILLIARD
having lawfully been ordered to surrender for service of sentence to the designated institution by Order of the United States District Court for the Eastern District of Pennsylvania, did knowingly and willfully fail to surrender to the institution or the custody of the Marshal's Service in violation of the Order of the Court.
In violation of Title 18, United States Code, Section 3146(a)(2).
18 U.S.C. § 3146(a)(2) reads as follows:
**(a) Offense**—Whoever, having been released under this chapter knowingly—
    \*     \*     \*     \*     \*     \*
(2) fails to surrender for service of sentence pursuant to court order; shall be punished as provided in subsection (b) of this section.

**4.** *See* footnote 1 *supra*.

Although the trial judge never made an explicit finding that Williard posed no danger to the community, such a finding was implicit in his release of the defendant pending execution of sentence.[5] *See United States v. Farran,* 611 F.Supp. 602 (D.C. Tex.1985), cert. denied, 476 U.S. 1144, 106 S.Ct. 2256, 90 L.Ed.2d 701 (1986) (recognizing implicit finding that defendant was unlikely to flee or pose danger to community in upholding conviction for failure to self surrender). The sentencing judge never asked defense counsel for additional evidence to support the contention that Williard posed no danger to the community, although the judge requested additional support for other arguments made by the defense during the sentencing hearing. The government neither argued nor offered evidence that Williard posed a danger to the community. In addition, the judge had heard the trial evidence relating to defendant's illegal activities, all of which involved long-term business transactions. It seems reasonable to conclude, therefore, that the judge did not consider Williard to pose a danger to the community in the two weeks remaining before he was to report to prison.

Although it is undisputed that the sentencing judge said bail was "revoked," in so stating the judge only denied defendant's request for release pending appeal under § 3143(b), and did not deny the request for release pending execution of sentence under § 3143(a). The judge's statement regarding revocation of bail came immediately after a long discussion as to whether Williard qualified for release pending appeal under § 3143(b).[6] There was no argument as to whether Williard met the first two requirements under that section, i.e., that he was unlikely to flee and did not pose a danger to the community. Rather, argument concerned the third prerequisite: whether an appeal by Williard would raise a substantial question of law or fact likely to result in reversal or retrial. The court "revoked" bail only after finding that defense counsel had failed to demonstrate that significant questions of law or fact would be raised by an appeal. Furthermore, the court indicated that, by so doing, it was granting the government's motion. Since the only motion made by the government concerned release pending appeal, it is fair to infer that the court only denied release pending appeal. Therefore, when the trial judge "stayed execution" of the sentence for two weeks, he released Williard pursuant to § 3143(a) pending execution of sentence.

The defendant argues that, regardless of the interpretation of the revocation of bail and absence of an explicit finding on risk of flight, the defendant was not released "under the Act" because the court did not specifically state that defendant was released on personal recognizance or impose conditions on his release as is required by § 3142(b).[7] This is an erroneous

---

5. The defense argues that implicit findings do not meet the requirements of the Bail Reform Act, and that the defendant, therefore, was not released pursuant to the Act as is required for conviction. The defense contends that the legislative intent of including post sentence release in § 3143 was to impose the *procedural* requirements of the Act on the practice of allowing voluntary surrender after sentencing. The defendant misinterprets the purpose behind the Act.

Congress' intent in revising the Act was to make it clear that a judge should presume, at the time of conviction and sentencing, that the conditions for allowing release no longer apply, and that the burden of proving that release is warranted is on the defendant. *See* 1984 U.S. Code Cong. & Ad.News 3182, 3209. Congress mandated hearings and findings in order to facilitate appellate review. To interpret the recent amendments to the Act as requiring a judge explicitly to make such findings in order to support a defendant's conviction for bail jumping is contrary to the legislative intent of the Act. I will not adopt such an interpretation.

6. *See* footnote 2 *supra.*

7. 18 U.S.C. § 3142(b) provides:
(b) Release on personal recognizance or unsecured appearance bond.—The judicial officer shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of release, unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person as required or will endanger the safety of any other person or the community.

interpretation of the Bail Reform Act. The Act does not impose the rigid requirement that a judge continually reiterate that a defendant is released on personal recognizance or the conditions of release. *See United States v. McGill,* 604 F.2d 1252, 1255 (9th Cir.1979), cert. denied, 444 U.S. 1035, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980) (rejecting argument that defendant was not guilty of bail jumping because trial court failed to reiterate that bond and its conditions were continued). *See also United States v. Burns,* 667 F.2d 781, 783 (9th Cir.1982), cert. denied, 456 U.S. 1010, 102 S.Ct. 2304, 73 L.Ed.2d 1306 (1982) (holding defendant was released under the Bail Reform Act despite fact terms of release were ill defined). In this case, Williard previously had been released on a bond that had express conditions. Therefore, when he was released pending execution of sentence, that bond and its conditions were continued.

Second, separate and apart from the foregoing, the Court determines that Williard was released under the Bail Reform Act because that Act provides the only mechanism by which a judge can release or detain a defendant pending sentencing, execution of a sentence, or appeal.[8] The Bail Reform Act states that a judicial officer *"shall order ... a person be released or detained under this chapter."* 18 U.S.C. § 3141(b) (emphasis added).[9] These words are not merely precatory; they make it clear that whenever a judicial officer detains or releases a defendant pending appeal or execution of sentence, he does so under the Bail Reform Act.

This interpretation of the statute is supported by *United States v. Burns,* 667 F.2d 781 (9th Cir.1982), cert. denied, 456 U.S. 1010, 102 S.Ct. 2304, 73 L.Ed.2d 1306 (1982). In that case the trial court released a defendant pending sentencing and stated only that the summons on which he had appeared was continued. The Ninth Circuit held that the trial court had released the defendant on personal recognizance pursuant to the Bail Reform Act because "[t]here is no other statutory authority for the release of convicted persons." *Burns,* 667 F.2d at 783.[10]

8. It is also important to note that Fifth Circuit has held that proof of release under the Bail Reform Act is not required unless defendant can demonstrate prejudice. *See United States v. Clemons,* 676 F.2d 124, 126 (5th Cir.1982); *United States v. Luis,* 418 F.2d 439 (5th Cir.1969). In this case there was no prejudice because the defendant was aware that he was on trial for willful failure to self surrender.

9. The full text of the section reads as follows:
**§ 3141 Release and detention authority generally (b) Pending sentence or appeal—A** judicial officer of a court of original jurisdiction over an offense, or a judicial officer of a Federal appellate court, shall order that, pending imposition or execution of sentence, or pending appeal of conviction or sentence, a person be released or detained under this chapter.

10. Defendant argues that *Burns* does not govern this case. He asks this court instead to follow *United states v. Castaldo,* 636 F.2d 1169 (9th Cir.1980), and *United States v. Bodiford,* 753 F.2d 380 (5th Cir.1985), and find that he was not released under the Bail Reform Act. These cases, however, are distinguishable from the case at bar.

In *Castaldo,* the defendant was released on bail under the Bail Reform Act pending appeal. When the defendant failed to appear for a court ordered hearing, the judge revoked bail and issued a bench warrant for defendant's arrest. The court then ordered a second hearing which the defendant also missed. When Castaldo was apprehended, he was indicted and convicted for bail jumping for having missed the *second* hearing. The Ninth Circuit overturned this conviction. It reasoned that because Castaldo was a fugitive at the time of the second hearing, he could not be punished under the Bail Reform Act. Essential to the Court's finding that Castaldo was a fugitive at the time of the second hearing was not that the judge had uttered the magic words "bail is revoked" at the first hearing, but rather, that Castaldo was at large in violation of an arrest warrant. See also *United States v. Burns,* 667 F.2d at 782 (supporting this interpretation of *Castaldo* ).

Williard, unlike Castaldo, was not a fugitive between the sentencing and his self surrender date; when he left the courtroom after sentencing he did so with the permission of the judge and was not subject to an arrest warrant.

*Bodiford* is equally off point. In that case the defendant had never been taken into custody or placed on bond. The Fifth Circuit reversed defendant's conviction for bail jumping, holding that a defendant not previously in custody can not be said to have been released under the Bail Reform Act. In the case at bar, there is no dispute that Williard was in custody at the time he was released by the trial court.

For the reasons given above, I find that at the sentencing hearing on September 25, 1987, the judge released Williard on his own recognizance pursuant to the Bail Reform Act, 18 U.S.C. § 3143(a), pending execution of sentence.

SECOND ELEMENT:

The second element of the offense of bail jumping is that the defendant failed to surrender for service of his sentence. Williard has not contested that he failed to self surrender at Allenwood Federal Prison Camp or at any other location on October 9, 1987, or at any other time.

For the reason given above, I find that Williard failed to report for service of his sentence. Therefore, the second element of the offense charged is proved.

THIRD ELEMENT:

Knowledge is the third essential element of a violation of 18 U.S.C. § 3146.[11] In order for defendant Williard to be guilty of the offense of bail jumping under the statute, he must have knowingly failed to surrender for service of his sentence. 18 U.S.C. § 3146(a)(2). This means that the defendant's decision not to appear must be made voluntarily and intentionally and not because of accident or mistake. *See Screws v. United States*, 325 U.S. 91, 101–102, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945). Although it is a close question in this case, I find that defendant Williard acted knowingly in failing to surrender

himself on October 9, 1987, as ordered by the sentencing judge.

The fact that a defendant was present when ordered by the court to appear on a specific date and that he subsequently failed to appear or keep his attorney or the authorities advised of his whereabouts can be considered in determining whether his failure to appear was knowing. *Cf. United States v. Ott*, 741 F.2d 226, 229 (8th Cir. 1984) (nonappearance and notice to appear can be considered in determining whether failure to appear was willful under former § 3150); *Gant v. United States*, 506 F.2d 518, 521 (8th Cir.1974), cert. denied, 420 U.S. 1005, 95 S.Ct. 1449, 43 L.Ed.2d 764 (1975) (failure to apprise lawyer or authorities of location can be considered in determining whether failure to appear was willful under former § 3150).

In this case, the sentencing judge told Williard that he was to report to the place of incarceration on Oct. 9, 1987.[12] Williard is fluent in English, a college graduate, and an experienced businessman. Therefore, it is fair to conclude that he understood the court's directive.

It is true that at sentencing Williard was not instructed to surrender at a specific institution because at that time the place of incarceration had not yet been determined. After it was determined, the authorities were unable to notify Williard personally of the location because he could not be reached at the numbers that he had provid-

---

**11.** In 1986 the bail jumping statute was amended. Prior to that date, former § 3150 required that the defendant act "knowingly and willfully." The present bail jumping statute, 18 U.S.C. § 3146, states only that the defendant must act "knowingly."

The legislative history of this amendment provides some evidence that although Congress deleted the word "willfully," it may have intended to perpetuate this concept. *See* 1984 U.S.Code Cong. & Ad.News 3214–15. The terms of the new statute, however, are unambiguous on their face. When such is the case, the language of the statute itself " 'must ordinarily be regarded as conclusive.' " *Burlington Northern R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (citation omitted). *See also United States v. Ron Pair Enters., Inc.*, — U.S. —, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) ("... where, as here, the statute's language is plain, 'the sole function of

the courts is to enforce it according to its terms' ") (citation omitted). This is not one of the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of the drafters", or "thwart the obvious purpose of the statute." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). Therefore, this court declines to read a willfulness requirement into 18 U.S.C. § 3146.

**12.** Specifically, the trial judge said: "I will give the defendant two weeks to wind up his affairs. He will report to the place of incarceration on the 14th of—I am sorry—I am looking at the calendar—the 9th of October at noon, and I will suspend execution of the sentence until then or grant a delay, I think is more accurate, until that date, the 9th of October at noon when he will report to the place of incarceration." (Tran. p. 45).

ed the Marshal's Office for that purpose. Actual knowledge of the place of surrender, however, is not required for conviction under the Bail Reform Act for knowing failure to surrender. A course of conduct designed to avoid knowledge is sufficient. *See United States v. Joyce*, 542 F.2d 158, 161 (2nd Cir.1976), cert. denied, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 548 (1977) (knowledge can be inferred from conscious avoidance). *Cf. United States v. Bright*, 541 F.2d 471, 476 (8th Cir.1976), cert. denied, 430 U.S. 935, 97 S.Ct. 1560, 51 L.Ed.2d 780 (1977) (defendant guilty of willful failure to appear under former § 3150 when he purposefully engaged in course of conduct designed to prevent receipt of notice to appear).

The court finds that Williard engaged in such purposefully evasive conduct designed to prevent receipt of notice to appear. Although he had designated two phone numbers at which he could be reached, the Marshal's Office could not locate him at either of these numbers on October 7, 1987, two days before he was to self surrender. There was no answer at defendant's home number. The second number was that of Mrs. Williard's place of employment and when called, Mrs. Williard stated that the defendant was not there. An assistant marshal asked her to tell the defendant that he was to surrender at Allenwood Federal Prison Camp on October 9, 1987 and that the defendant should call him so that he would know that the message had been received. In February, 1988, over four months after the defendant was to begin serving his sentence, two more attempts were made to contact him. On both of these occasions a deputy marshal spoke to Mrs. Williard and asked her to have the defendant contact him. Notwithstanding such telephone calls, there is no record of any attempt by Williard to contact the Marshal's Office. Williard was eventually apprehended at his home on June 15, 1988, eight months after he was supposed to have surrendered.

For the reasons given above, I find that Williard acted knowingly in failing to report to the Attorney General or his authorized representative on October 9, 1987, at noon for service of his sentence as required by court order.

The defendant, Elwood Williard, stands guilty as charged of violating 18 U.S.C. § 3146(a)(2).