**HERCULES INCORPORATED, Olin Corporation, and Thiokol Corporation, Petitioners,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 90–1368.

United States Court of Appeals, District of Columbia Circuit.

Argued May 20, 1991.

Decided July 12, 1991.

Carole Stern, Washington, D.C., with whom Mark A. Ferrin was on the joint brief, Apo, N.Y., for petitioners.

Barry M. Hartman, Atty., U.S. Dept. of Justice, Washington, D.C., for respondent. Earl Salo, Asst. Gen. Counsel and George Wyeth, Atty., U.S.E.P.A., Richard B. Stewart, Asst. Atty. Gen. and W. Christian Schumann, Atty., U.S. Dept. of Justice, were on the brief, Washington, D.C., for respondent.

Before MIKVA, Chief Judge, and WILLIAMS and THOMAS, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

A 1986 amendment to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq. (1988), imposes notice and covenant requirements on federal agencies that transfer real property contaminated by hazardous substances. The Environmental Protection Agency ("EPA"), in implementing the notice requirements of the amendment, applied them only to properties where contamination occurred during the period of government ownership. The EPA also declined to provide a definition of what constitutes a contract for the transfer of real property or to address the issue of whether leases should be deemed transfers of real property, stating with respect to leases that the question was better left for case-by-case determination by agencies. Petitioners challenge each of these features of the EPA's rulemaking and claim

further that the proposed regulation failed to provide adequate notice that the EPA might adopt these positions in its final rule. Although we reject petitioners' other arguments, we agree with them that the statutory language is unambiguous in extending the government's notice obligations to all contaminated properties it owns regardless of whether the contamination occurred while the government owned the property; we therefore grant the petition for review.

## I. BACKGROUND

### A. The Statutory Framework

CERCLA was enacted "to provide authority and funding for the cleanup of serious threats to public health and the environment resulting from disposal of hazardous waste." *Ohio v. EPA*, 838 F.2d 1325, 1327 (D.C.Cir.1988). Under CERCLA, the EPA is required to devise a national contingency plan for responding to releases of hazardous substances and is authorized to use the Hazardous Substance Superfund to finance response costs. *See* 42 U.S.C. §§ 9604–9605, 9611. The EPA may seek recovery of cleanup costs from any responsible party it can locate. *See* 42 U.S.C. § 9607(a). Alternatively, the EPA may order a responsible party to clean up a site where there has been a release or a threatened release of a hazardous substance and the site presents an "imminent and substantial endangerment to the public health or welfare or the environment." 42 U.S.C. § 9606(a). In addition, responsible parties may be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). CERCLA identifies four categories of responsible parties subject to liability, including current owners or operators of facilities containing hazardous substances and owners or operators at the time of disposal. *See* 42 U.S.C. § 9607(a).

In 1986, Congress enacted the Superfund Amendments and Reauthorization Act ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613, which amended CERCLA in a number of respects. Among other provisions, SARA added section 120 to CERCLA, 42

U.S.C. § 9620, to address the problem of responsibility for hazardous substances located on federally owned sites. Section 120(a) provides that federal departments, agencies, and instrumentalities are subject to the provisions of CERCLA to the same extent as are private parties. Sections 120(b)–(f) establish a comprehensive program to ensure the identification and clean-up of federal sites. In section 120(h), the provision at issue here, Congress imposed notice and covenant requirements on federal agencies that transfer real property contaminated by hazardous substances. Section 120(h)(1) provides in relevant part:

> [W]henever any department, agency, or instrumentality of the United States enters into any contract for the sale or other transfer of real property which is owned by the United States and on which any hazardous substance was stored for one year or more, known to have been released, or disposed of, the head of such department, agency, or instrumentality shall include in such contract notice of the type and quantity of such hazardous substance and notice of the time at which such storage, release, or disposal took place, to the extent such information is available on the basis of a complete search of agency files.

42 U.S.C. § 9620(h)(1). Section 120(h)(2) requires the EPA to issue regulations establishing the "form and manner" of the required notice. Finally, section 120(h)(3) requires that deeds for the transfer of federal real property contain the same notice as that required for contracts to transfer real property, as well as covenants warranting that remedial action has been taken to clean up the site and that the government will take any further remedial action found to be necessary after the date of the transfer.

B. *EPA's Regulatory Action*

In January 1988, the EPA, exercising its authority under section 120(h)(2), published a proposed rule implementing the notice requirements of section 120(h)(1), stating that in most cases it intended to apply the requirements without regard to whether the hazardous substance activities occurred during the period of federal ownership or prior to the government's acquisition of the property. *See* 53 Fed.Reg. 850, 851 (1988). The EPA expressed concern about the burden of applying the requirements to properties obtained by the government through foreclosure and expressed doubt that Congress intended section 120(h) to apply to such properties, but nonetheless decided that it would be "both prudent and appropriate" to apply the requirements to foreclosed properties, with an exclusion for certain small residential properties. *See id.* With regard to the latter, the EPA believed that "most small, residential properties would not be the site of any significant hazardous substances activity" and that any health or environmental gains from including them in the regulation "would be minimal." *Id.* Among other features of the proposed rule, the EPA defined certain terms used in the statute (such as "storage," "release," and "disposal"), *see id.* at 852, 854, but did not define the phrase "transfer of real property," stating only that it presumed Congress meant to incorporate the definition contained in the Federal Property Management Regulations ("FPMR"), 41 C.F.R. § 101–47. *See* 53 Fed.Reg. at 851. The proposed rule made no specific mention of leases.

In April 1990, fully two years after the statutory deadline, *see* 42 U.S.C. § 9620(h)(2), the EPA promulgated its final rule implementing section 120(h)(1). *See* 55 Fed.Reg. 14,208 (1990) (codified at 40 C.F.R. § 373 (1990)). The final rule revised the proposed rule in two respects important here. First, the final rule applied the notice requirements of section 120(h)(1) only to real property on which hazardous substances were stored, released, or disposed of "during the time the property was owned by the United States." *Id.* at 14,-212; 40 C.F.R. § 373.1. The EPA explained that it now believed that Congress was primarily concerned with federal facilities (chiefly military bases and nuclear weapons facilities) whose own operations involved the storage, release, or disposal of hazardous substances and that section 120(h) therefore was not intended to apply where these activities occurred prior to the

government's acquisition of the property. *See* 55 Fed.Reg. at 14,210. This interpretation, it concluded, was "more appropriate ... than [EPA's] earlier approach ... which focused on the manner in which the property was acquired" and would avoid imposing unfair and unmanageable obligations on federal agencies that had no role in the storage, release, or disposal of hazardous substances. *See id.*

Second, the EPA declined to adopt a general definition of "transfer" in the final rule or to determine the extent to which leases are subject to the notice requirements. *See id.* at 14,208–09. In response to commenters who complained that they were unable to find a definition of "transfer" in the FPMR, the EPA stated that it had referred to the FPMR in its proposed rulemaking only in order to ensure that "federal agencies realized that the proposed regulations applied to transfers of property *between* agencies," as well as to transfers between an agency and a private party and between an agency and a state or local government. *Id.* at 14,208 (emphasis in original). Although it recognized that "[d]etermining what constitutes a 'transfer' of real property is important for implementing the requirements of section 120(h)," *id.*, the EPA failed to offer any general definition of the term. With respect to the more specific questions of "whether and to what extent leases and easements should be included among the types of property" subject to the rule, the EPA stated that "[t]hese questions involve a complicated area of real property law, and may be affected by specific deed or lease terms and by state common law. Accordingly, EPA has not addressed these issues in the final rule." *Id.* at 14,209.

Following promulgation of the final rule, petitioners, who periodically enter into contracts for the purchase or lease of federal property, filed this petition for review.

## II. ANALYSIS

Petitioners challenge the EPA's final rule on three grounds. First, they argue that the EPA's decision to apply section 120(h)(1) only to real property where haz-ardous substance activities occurred during the period of government ownership is contrary to the express terms of the statute, congressional intent, and the statutory scheme taken as a whole. Second, they challenge as arbitrary and capricious the EPA's failure to define the term "transfer" or to include leases among the types of transfers subject to the requirements of section 120(h)(1). Finally, they claim that the EPA violated the notice and comment requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553 (1988), by failing to give adequate notice in the proposed rule that it might adopt the policies on prior ownership and leases embodied in the final rule.

### A. The Statutory Challenge

Section 120(h)(1) provides that whenever the federal government contracts for the "sale or other transfer of real property which is owned by the United States and on which any hazardous substance was stored for one year or more, known to have been released, or disposed of," it must provide notice of the activity to the purchaser or transferee based on "a complete search of agency files." 42 U.S.C. § 9620(h)(1). In implementing this provision, the EPA adopted the statutory language essentially verbatim, with the crucial addition of the words "during the time the property was owned by the United States" before the words "any hazardous substance." 40 C.F.R. § 373.1.

We reject the EPA's action because it reads into the statute a drastic limitation that nowhere appears in the words Congress chose and that, in fact, directly contradicts the unrestricted character of those words. By its terms, section 120(h) requires agencies to disclose *all* information of the kind specified (namely, the "type and quantity" of hazardous substances on the property and "the time at which [the] storage, release, or disposal took place") to the extent the information is contained in the agency's files, and the plain meaning of Congress's words thus extends the government's notice obligations to properties contaminated by *prior* owners. Congress

clearly knew how to protect governmental entities from certain types of liability for such properties when it wanted to do so. *See, e.g.,* 42 U.S.C. § 9601(20)(D) (definition of "owner or operator" excludes states and localities that acquire contaminated property involuntarily); 42 U.S.C. § 9601(35)(A)(ii) (extending innocent landowner defense to governmental entities that acquire contaminated property involuntarily). It did not do so here, however, and the EPA has literally rewritten the statute by inserting words of limitation that Congress never drafted. "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). We therefore need not look beyond the words of the statute to the legislative history for guidance, as the EPA urges, although it is worth noting that nothing in that history in any way suggests a congressional intent inconsistent with the plain meaning of the statute's language.

Contrary to the EPA's suggestion, this is not a case where "the literal reading of a statutory [provision] would 'compel an odd result.'" *Public Citizen v. Department of Justice,* 491 U.S. 440, 454, 109 S.Ct. 2558, 2567, 105 L.Ed.2d 377 (1989) (quoting *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 509, 109 S.Ct. 1981, 1984, 104 L.Ed.2d 557 (1989)). As noted earlier, the EPA argues that giving the statute's words their plain meaning would result in the imposition of unfair and unmanageable notice and remediation obligations on federal agencies concerning the hazardous waste activities of prior owners. This argument, however, ignores some crucial points. First, CERCLA explicitly supports the imposition of remediation obligations on parties who were not responsible for contamination and who have no experience in the handling or remediation of hazardous substances, as when it imposes liability on the sole basis that a party is the current owner or operator of a site contaminated by some previous owner or operator. *See* 42 U.S.C. § 9607(a); *see also New York v. Shore Realty Corp.,* 759 F.2d 1032, 1043–45 (2d Cir.1985) (construing section 9607(a) as imposing strict liability on current owners or operators); *Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1572 (5th Cir.1988) (same). Second, Congress limited agencies' obligations under section 120(h) to information contained in agency files. Although the EPA thinks it unlikely that an agency's files will contain information concerning hazardous substance activities of prior owners, it is certainly not implausible that Congress believed it would be unfair to subsequent purchasers if agencies were permitted to withhold information concerning contamination that, for whatever reasons, does happen to be reflected in agency files.

■ Although the parties' dispute here narrowly concerns only the EPA's implementation of the notice requirements of section 120(h)(1), in the background of this litigation lie the remediation requirements of section 120(h)(3). If our construction of the statute imposes financial burdens on federal agencies beyond those that flow from other provisions of CERCLA, relief from those burdens must come from Congress. Absent exceptional circumstances not presented here, "[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *see also Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987) (quoting *Rubin*). To the extent that the notice requirements themselves may impose undue burdens, it appears that the EPA has yet to explore other regulatory options that could possibly lessen those burdens. At oral argument, counsel for the EPA stressed in particular the burdens that would result if federal agencies were required to search the records of businesses it acquires through foreclosure or other involuntary seizures. Counsel conceded, however, that these concerns were premised on an expansive interpretation of what constitutes an "agency file" for purposes

of section 120(h)—an interpretation, we also note, that undermines the EPA's assertion that agency files are unlikely to contain information about contamination occurring prior to the government's acquisition of the property. Our decision today in no way precludes the EPA from exploring, should it choose to do so, what reasonable definitions of "agency files" might allay its concerns about the impact of the statute on federal agencies' file-searching duties.

### B. *The Transfer and Lease Issues*

Petitioners next challenge the EPA's failure to define what constitutes a transfer of federal real property subject to the requirements of section 120(h)(1) and, more specifically, its failure to state whether leases are included among such transfers. The EPA argues in response that this court lacks jurisdiction to consider this challenge. Although we reject the EPA's jurisdictional argument, we uphold its actions on the merits.

#### 1. *Jurisdiction*

■ The EPA argues that we lack jurisdiction to consider petitioners' challenge because section 113(a) of CERCLA, 42 U.S.C. § 9613(a), does not permit us to review the EPA's failure to take regulatory action on a particular issue. The EPA relies chiefly on *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277 (D.C.Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989), where we construed a jurisdictional statute similar to section 113(a) and held that "an agency's failure to regulate more comprehensively [than it has] is not ordinarily a basis for concluding that the regulations already promulgated are invalid." *Id.* at 287. We stated that agencies may address a problem one step at a time and that, so long as the first step does not foreclose more comprehensive regulation, that step "is not assailable merely because the agency failed to take a second." *Id.* *See also United Technologies Corp. v. EPA*, 821 F.2d 714, 720–21 (D.C. Cir.1987); *Environmental Defense Fund v. EPA*, 598 F.2d 62, 90–91 (D.C.Cir.1978).

This general principle, however, is subject to an important exception not discussed by the EPA. In *Colorado v. Department of Interior*, 880 F.2d 481 (D.C. Cir.1989), which also involved section 113(a) of CERCLA, we held that when the statutory deadline for issuing regulations has passed, the promulgated regulations must be deemed the agency's "complete response in compliance with the statutory requirements" underlying the agency's action. *Id.* at 485. Accordingly, "even if [the agency] promulgates additional ... rules sometime in the future, petitioners' claim that the *existing* final regulations are unlawful remains reviewable by this court." *Id.* at 485–86 (emphasis in original). As noted earlier, the deadline for agency action in this case has long since passed, and the EPA's final rule thus represents the EPA's "complete response in compliance with the statutory requirements" of section 120(h). This court therefore has jurisdiction to review the lawfulness of the EPA's actions.

#### 2. *The Merits*

■ On the merits, petitioners argue that the EPA acted arbitrarily and capriciously by not specifying what contracts constitute transfers of real property under section 120(h)(1) and by not including leases within that category. More particularly, they assert that the EPA's decision not to address the issue of leases was based (at least in part) on the incorrect assumption that state common law is applicable to what constitutes a transfer of federal real property. *See* 55 Fed.Reg. at 14,209. They further assert that the EPA failed to consider the practical implications of its decision, arguing that because a lessee may be deemed a current operator of a facility under CERCLA, lessees of federal facilities may be exposed to substantial cleanup obligations without the certainty of knowing whether section 120(h) affords them any protection.

Petitioners' arguments fail for the simple reason that the EPA was required under section 120(h)(2) only to promulgate regulations concerning the "form and manner" of

notice under the statute. We do not believe this required the EPA to define all terms contained in the statute, and the EPA therefore acted within its discretion under the statute by declining to provide any general definition of the term "transfer," as it also declined to define other terms such as "real property." *See id.* We agree with the EPA that "what constitutes a 'transfer' of real property is important for implementing the requirements of section 120(h)," *id.* at 14,208, and we do not doubt that a uniform administrative definition would assist agencies in fulfilling their duties under the statute. We cannot conclude, however, that the EPA's failure to provide a comprehensive definition of the term, or, more specifically, to clarify the status of leases, was arbitrary or capricious. The EPA apparently made specific mention of leases at all only because one commenter suggested that the rule not apply to transfers of leases between government agencies. The EPA's rather laconic response to this comment was that no uniform rule on leases was called for because the status of leases as transfers of real property "may be affected by specific ... lease terms and by state common law." *Id.* at 14,209. Although we find this rationale less than fully persuasive (state law would seem to enter the picture only very indirectly, as in determining whether under the statute of frauds a particular instrument served to create a qualifying "transfer" as defined by federal law), this does not affect the more fundamental point that the EPA acted within its discretion in declining to provide any definition of the term "transfer." Should the EPA later decide to provide a uniform definition of the term, however, we trust that it will offer a more cogent analysis of the status of leases than it has to date.

## C. *Compliance with the APA's Rulemaking Requirements*

Petitioners argue that the EPA failed to provide adequate notice in the proposed regulation that the final rule might exclude from its scope all properties where contamination occurred prior to the period of governmental ownership and might not ad-dress the issue of leases. Given our resolution of petitioners' statutory claim, we need not reach their notice claim with respect to contamination by prior owners. As to leases, we reject their challenge.

■ Under section 4 of the APA, 5 U.S.C. § 553, an agency must provide interested parties with adequate notice of, and an opportunity to comment on, the provisions that appear in the agency's final regulations. Whether an agency has complied with this requirement depends on whether the final rule is a "logical outgrowth" of the proposed rule and the rulemaking proceedings. *See, e.g., United Steelworkers of America v. Marshall,* 647 F.2d 1189, 1221 (D.C.Cir.1980), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981); *Small Refiner Lead Phase–Down Task Force v. EPA,* 705 F.2d 506, 546–47 (D.C. Cir.1983); *Natural Resources Defense Council v. Thomas,* 838 F.2d 1224, 1242 (D.C.Cir.), *cert. denied,* 488 U.S. 888, 109 S.Ct. 219, 102 L.Ed.2d 210, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 238 (1988). As phrased in *Small Refiner,* the test is whether the parties "should have anticipated that [the controverted] requirement might be imposed." *Small Refiner,* 705 F.2d at 549.

■ On the issue of leases, the proposed rule stated nothing more than that the EPA anticipated using the definition of "transfer" contained in the FPMR. *See* 53 Fed.Reg. at 851. Parties interested in whether the term would or would not reach certain categories of transactions were effectively placed on notice that they should consult the definition of "transfer" contained in the FPMR, and several commenters in fact pointed out to the agency that the FPMR contained no definition of the term. *See* 55 Fed.Reg. at 14,208. Moreover, if any interested party believed that the regulations should specifically address the status of leases, the EPA's failure to address the issue in the proposed rule should have placed them on notice that the final rule also might fail to do so. We therefore find no procedural fault with the EPA's action.

### III. CONCLUSION

We reject petitioners' challenge on the issue of transfers and leases, as well as their contention that the EPA violated the notice and comment provisions of the APA. However, we find that the EPA's interpretation of section 120(h) as applying only to properties where contamination occurred during the period of government ownership flies in the face of the plain meaning of the statutory language. Accordingly, we grant the petition for review in that respect, vacate that portion of the rule, and remand to the EPA for further rulemaking consistent with this opinion. In light of the fact that the deadline for issuance of regulations implementing section 120(h)(1) has long since passed, we expect that the EPA will act expeditiously in issuing a revised rule.

*So ordered.*