121 T.C. No. 8

UNITED STATES TAX COURT

FEDERAL HOME LOAN MORTGAGE CORPORATION, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 3941-99, 15626-99.        Filed September 4, 2003.

P was chartered by an act of Congress in 1970 and
was originally exempt from Federal income taxation.
Pursuant to the Deficit Reduction Act of 1984 (DEFRA),
Pub. L. 98-369, sec. 177, 98 Stat. 709, P became
subject to Federal income taxation, effective Jan. 1,
1985. For its taxable years 1985 through 1990, P
claims entitlement to amortize intangibles using a fair
market value basis as of Jan. 1, 1985. P's claim that
it is entitled to use fair market value as its adjusted
basis for amortization is based on the provisions of
DEFRA that specifically apply only to P. R determined
that P's adjusted basis for amortizing any intangibles
is the regular adjusted cost basis of those assets as
of Jan. 1, 1985.

Held: Under sec. 167(g), I.R.C., the basis for
amortization of property is the adjusted basis provided
in sec. 1011, I.R.C., for the purpose of determining
gain on the sale or other disposition of property. The
adjusted basis provided in sec. 1011, I.R.C., is

generally based on cost. However, DEFRA sec. 177(d)(2)(A)(ii) modifies the application of sec. 1011, I.R.C., by providing specific rules for determining the adjusted basis of property held by P on Jan. 1, 1985. Under DEFRA sec. 177(d)(2)(A)(ii), the adjusted basis of any asset held by P on Jan. 1, 1985 (with the exception of tangible depreciable property) shall, for purposes of determining any gain, be equal to the higher of the regular adjusted cost basis as provided in sec. 1011, I.R.C., or the fair market value of such asset as of Jan. 1, 1985. P's adjusted basis as of Jan. 1, 1985, for purposes of amortization, is the higher of the regular adjusted cost basis or fair market value on Jan. 1, 1985.

Robert A. Rudnick, Stephen J. Marzen, James F. Warren, and Neil H. Koslowe, for petitioner.

Gary D. Kallevang, for respondent.

OPINION

RUWE, Judge: Respondent determined deficiencies in petitioner's Federal income taxes in docket No. 3941-99 for 1985 and 1986, as follows:

| Year | Deficiency |
|------|-----------|
| 1985 | $36,623,695 |
| 1986 | 40,111,127 |

Petitioner claims overpayments of $9,604,085 for 1985 and $12,418,469 for 1986.

Respondent determined deficiencies in petitioner's Federal income taxes in docket No. 15626-99 for 1987, 1988, 1989, and 1990, as follows:

| Year | Deficiency |
|------|-----------|
| 1987 | $26,200,358 |
| 1988 | 13,827,654 |
| 1989 | 6,225,404 |
| 1990 | 23,466,338 |

Petitioner claims overpayments of $57,775,538 for 1987, $28,434,990 for 1988, $32,577,346 for 1989, and $19,504,333 for 1990.

Petitioner claims entitlement to amortize (all or a portion of) its asserted tax basis in certain alleged intangibles held on January 1, 1985.[1]  Petitioner's asserted tax basis in each of these alleged intangibles represents petitioner's determination of the respective fair market values of those intangibles as of January 1, 1985.  Petitioner and respondent filed cross-motions for partial summary judgment under Rule 121[2] regarding the appropriate basis for amortizing intangible assets that petitioner claims to have held on January 1, 1985, the date it first became subject to Federal income taxation.

---

[1] Respondent disputes whether the claimed intangibles are assets that are amortizable for tax purposes.  One of the claimed intangibles involves certain below-market financing which petitioner claims to have held on Jan. 1, 1985.  In their cross-motions for partial summary judgment, the parties also ask us to determine whether the claimed intangible for below-market financing is amortizable.  We do not decide that issue in this Opinion.

[2] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the taxable years in issue.

In this opinion, we decide whether, for purposes of computing a deduction for amortization, the adjusted basis of any amortizable intangible assets that petitioner held on January 1, 1985, is the regular adjusted cost basis provided in section 1011 or the higher of the regular adjusted cost basis or fair market value of such assets on January 1, 1985, as provided in the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 177, 98 Stat. 709.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner's principal office was located in McLean, Virginia. At all relevant times, petitioner was a corporation managed by a board of directors.

Petitioner was chartered by Congress on July 24, 1970, by the Emergency Home Financing Act of 1970, Pub. L. 91-351, title III (Federal Home Loan Mortgage Corporation Act), 84 Stat. 451. Petitioner was originally exempt from Federal income taxation. However, Congress repealed petitioner's Federal income tax exemption status in DEFRA section 177. Pursuant to this Act, petitioner became subject to Federal income taxation, effective January 1, 1985.

The question we must decide in this opinion involves a determination of petitioner's basis for amortizing intangibles that it allegedly held on January 1, 1985. Section 167(g), which forms the basis for amortization deductions, provides that "The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011 <u>for the purpose of determining the gain on the sale or other disposition of such property</u>." (Emphasis added.) Section 1011 generally provides for an adjusted cost basis for purposes of determining gain or loss (regular adjusted cost basis). From the arguments presented by the parties, it appears that petitioner would have relatively little or no adjusted basis in its alleged intangibles if the regular adjusted cost basis provisions of section 1011 applied.

As a part of the legislation pursuant to which petitioner became subject to Federal income taxation, Congress enacted "special basis rules designed to ensure that, to the extent possible, pre-1985 appreciation or decline in the value of * * * [petitioner's] assets will not be taken into account for tax purposes." H. Conf. Rept. 98-861, at 1038 (1984), 1984-3 C.B. (Vol. 2) 1, 292. The special basis rules, which are contained in DEFRA section 177(d)(2), 98 Stat. 711, provide a dual-basis rule for purposes of determining any loss and any gain regarding

assets held by petitioner on January 1, 1985. DEFRA section

177(d)(2)(A) provides:

>      (2)  Adjusted basis of assets.--
>
>           (A) In general.--Except as otherwise provided in
>      subparagraph (B), the adjusted basis of any asset of
>      the Federal Home Loan Mortgage Corporation held on
>      January 1, 1985, shall--
>
>           (i) for purposes of determining any loss, be equal
>      to the lesser of the adjusted basis of such asset or
>      the fair market value of such asset as of such date,
>      and
>
>           (ii) <u>for purposes of determining any gain</u>, be
>      equal to the higher of the adjusted basis of such asset
>      or the fair market value of such asset as of such date.
>      [Emphasis added.]

Petitioner claims that it is entitled to amortize

intangibles that it held on January 1, 1985, using a fair market

value basis under DEFRA section 177(d)(2)(A)(ii). Petitioner

claims the following fair market values for its alleged

intangibles:

| Intangibles | Fair Market Value |
|---|---|
| Information systems | $27,214,000 |
| Favorable leasehold | 9,459,349 |
| Seller/servicer list | 6,215,000 |
| Favorable financing | 456,021,853 |
| Customer relations | 600,000,000 |

Petitioner claims entitlement to the following amortization

deductions for its 1985-90 taxable years:

| Claimed Intangible | 1985 | 1986 | 1987 | 1988 | 1989 | 1990 |
|---|---|---|---|---|---|---|
| Information systems | $5,981,964 | $5,981,964 | $5,981,952 | $5,931,920 | $3,336,160 | $40 |
| Favorable leaseholds | 513,120 | 513,120 | 380,625 | 368,580 | 368,446 | 367,164 |
| Seller/servicer list | 1,123,572 | 1,123,572 | 1,123,572 | 711,072 | 711,072 | 711,072 |
| Favorable financing | 50,219,116 | 48,702,457 | 47,017,000 | 45,835,556 | 40,680,420 | 38,028,084 |
| Customer relations | 60,000,000 | 60,000,000 | 60,000,000 | 60,000,000 | 60,000,000 | 60,000,000 |
| Total claim | [1]117,837,720 | 116,321,113 | 114,503,149 | 112,847,128 | 105,096,098 | 99,106,360 |

[1]The parties stipulate this table; the actual total of the claimed amortization deductions for 1985 is $117,837,772.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. FPL Group, Inc. v. Commissioner, 116 T.C. 73, 74 (2001). Either party may move for summary judgment upon all or any part of the legal issues in controversy. Rule 121(a); FPL Group, Inc. v. Commissioner, supra at 74. A decision will be rendered on a motion for partial summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). The moving party has the burden of proving that no genuine issue of material fact exists and that party is entitled to judgment as a matter of law. Rauenhorst v. Commissioner, 119 T.C. 157, 162 (2002).

The parties in the instant cases filed cross-motions for partial summary judgment on the question of whether petitioner's claimed intangibles are amortizable using their fair market value

on January 1, 1985, as adjusted basis.  The parties agree that there are no genuine issues of material fact relating to this legal question.  Respondent assumes for purposes of this issue that at least some of petitioner's claimed intangibles are amortizable for tax purposes.

Arguments of the Parties

Petitioner claims that the special basis rules of DEFRA section 177(d)(2) provide the adjusted basis for purposes of amortizing any intangibles that it held as of January 1, 1985. Petitioner contends that this result is required by the interaction of section 167(g) and DEFRA section 177(d)(2)(A). Thus, petitioner claims that it is entitled to amortize its alleged intangibles at their fair market value.

Respondent argues that DEFRA section 177(d)(2) does not provide rules for determining the adjusted basis for amortization of petitioner's intangibles but, instead, provides special basis rules solely for purposes of determining gain and loss from the sale or other disposition of property that petitioner held on January 1, 1985.  He argues that petitioner's adjusted basis for purposes of amortizing any intangibles that it might have held on that date is determined under the regular adjusted cost basis rules of the Code without reference to the special basis rules of DEFRA section 177(d)(2).  Respondent contends that petitioner would have relatively little or no adjusted cost basis.

Analysis

In interpreting a statute, we start as always with the language of the statute itself. Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). We look to the legislative history primarily to learn the purpose of the statute and to resolve any ambiguity in the words contained in the text. Wells Fargo & Co. v. Commissioner, 120 T.C. 69, 89 (2003); Allen v. Commissioner, 118 T.C. 1, 7 (2002). If the language of the statute is plain, clear, and unambiguous, we generally apply it according to its terms. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989); Burke v. Commissioner, 105 T.C. 41, 59 (1995). If the statute is ambiguous or silent, we may look to the statute's legislative history to determine congressional intent. Burlington N. R.R. v. Okla. Tax Commn., 481 U.S. 454, 461 (1987); Ewing v. Commissioner, 118 T.C. 494, 503 (2002).

DEFRA section 177(d)(2)(A) does not specifically state that the adjusted basis for purposes of determining gain provided therein is also to be used for purposes of amortizing petitioner's intangibles held on January 1, 1985. The legislative history likewise does not contain a specific expression of congressional intent with respect to the amortization of intangibles. The conference report states simply:

> The Senate amendment includes special basis rules
> designed to ensure that, to the extent possible, pre-

1985 appreciation or decline in the value of Freddie Mac assets will not be taken into account for tax purposes. Under these rules, for purposes of determining gain, the basis of any asset held on January 1, 1985, is to be the higher of (1) the regular adjusted basis of the asset in the hands of Freddie Mac, or (2) the fair market value of the asset on January 1, 1985. For purposes of determining loss, the basis of any asset held on January 1, 1985, is to be the lower of these two figures. Where the amount realized on the disposition of an asset is greater than the lower of these figures, but less than the higher figure, no gain or loss is to be recognized by Freddie Mac on the disposition. [H. Conf. Rept. 98-861, supra at 1038, 1984-3 C.B. (Vol. 2) at 292.]

DEFRA section 177(d)(2) provides a specific adjusted basis for purposes of determining any gain on the sale or other disposition of petitioner's property: DEFRA section 177(d)(2)(A)(ii) provides that the adjusted basis of any asset held by petitioner on January 1, 1985, shall, for purposes of determining any gain, be equal to the higher of the regular adjusted cost basis of such asset or the fair market value of such asset as of such date. The Code has historically used the adjusted basis for determining gain as the reference point for determining the basis for the depreciation or amortization of property. Indeed, section 167(g)[3] specifies that the basis for determining gain is the basis to be used for depreciation or amortization.[4]

_____

[3]Sec. 167(g) currently appears in the Code as sec. 167(c).

[4]Sec. 167(g) provides rules relating to the basis for the depreciation of tangible property and the amortization of
(continued...)

Section 167(g) provides that "The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property." See also sec. 1.167(g)-1, Income Tax Regs. Section 167(g) refers specifically to the adjusted basis for determining gain provided in section 1011. Section 1011(a) provides:

> SEC. 1011(a). General Rule.--The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 or other applicable sections of this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses)), adjusted as provided in section 1016.

As a general matter, section 1011 requires the use of the cost basis determined under section 1012,[5] adjusted as provided in

---

[4](...continued) intangible property. See secs. 1.167(a)-3, 1.167(g)-1, Income Tax Regs.

[5]Sec. 1012 provides:

SEC. 1012. BASIS OF PROPERTY--COST.

> The basis of property shall be the cost of such property, except as otherwise provided in this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses). * * *

section 1016[6] (i.e., the regular adjusted cost basis), for purposes of determining gain or loss.  Section 1011 does not specify any alternative basis rules besides those contained in other sections of subchapters C, K, O, and P of the Code, which are not applicable to the instant cases.

DEFRA section 177(d)(2), which has not been codified, is not specifically referenced in section 1011.  Nevertheless, DEFRA section 177(d)(2)(A) specifically provides the rules for determining adjusted basis in property held on January 1, 1985, when determining petitioner's gain on the sale or other disposition of such property.  Thus, as to petitioner, the specific basis rules contained in DEFRA section 177(d)(2)(A) replace the regular adjusted cost basis rules contained in sections 1011 through 1023 of the Code.  Since section 167(g) requires that the adjusted basis for determining gain be used as the adjusted basis for amortizing intangibles, it is logical to conclude that petitioner must use the specific adjusted basis determined under DEFRA section 177(d)(2)(A)(ii) to amortize any intangiables it might have held on January 1, 1985.

---

[6]Sec. 1016 provides adjustments to basis; e.g., for expenditures, receipts, losses, or other items, properly chargeable to capital account and for exhaustion, wear and tear, obsolescence, amortization, and depletion to the extent of the amount allowed (but not less than the amount allowable) as deductions in computing taxable income.  Sec. 1016(a)(1) and (2).

Respondent argues that section 167(g) refers to section 1011 and that section 1011 does not refer to the specific adjusted basis rule of DEFRA section 177(d)(2)(A)(ii).  However, we point out that DEFRA section 177(d)(2)(A)(ii) is a special transition rule, which is applicable only to property held by petitioner as of January 1, 1985, and which replaces section 1011 for purposes of determining gain.  Under these circumstances, we are not inclined to read too much into the absence of a specific reference to DEFRA section 177(d)(2)(A)(ii) in section 1011 or in the enumerated subchapters cited in section 1011.  Further, the regulation interpreting section 1011(a) provides:

> The adjusted basis for determining the gain or loss from the sale or other disposition of property is the cost or other basis prescribed in section 1012 or other applicable provisions of subtitle A of the Code, adjusted to the extent provided in sections 1016, 1017, and 1018 <u>or as otherwise specifically provided for under applicable provisions of internal revenue laws</u>. [Sec. 1.1011-1, Income Tax Regs.; emphasis added.]

The parties advance differing interpretations of the "internal revenue laws" language in section 1.1011-1, Income Tax Regs.  Petitioner argues that this language should be read to incorporate any internal revenue law which specifically provides the adjusted basis for determining gain or loss from the sale or other disposition of property.  Respondent contends that "It is apparent" from the text of section 1011 "that alternatives to the cost basis of § 1012 are confined to 'this subchapter' (subchapter O) or elsewhere in the Code, namely, subchapters C, K

and P."  He argues that section 1011 does not refer to an adjusted basis specified in other "internal revenue laws", and the language in section 1.1011-1, Income Tax Regs., "does not provide for alternatives to § 1012 itself; it provides for some mechanism of basis adjustments as an alternative to §§ 1016, 1017 and 1018."[7]

We read section 1.1011-1, Income Tax Regs., to incorporate rules for determining adjusted basis in property which are "specifically provided for under applicable provisions of internal revenue laws."  We do not read the regulation to mean that the section and subchapters enumerated in section 1011 are the exclusive means of determining adjusted basis in property.[8] This interpretation is more consistent with the application of

---

[7]Respondent also argues:

> Even if Treas. Reg. § 1.1011-1 can be read, as petitioner apparently wants to read it, so as to permit some other "internal revenue act" to supplant the cost basis of § 1012 (or the others permitted by § 1011), such alternative "internal revenue act" would then be outside of § 1011.  * * *

We do not construe respondent's argument to suggest that sec. 1.1011-1, Income Tax Regs., may be an invalid interpretation of sec. 1011.

[8]We point out that the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 177(d)(2), 98 Stat. 711, was enacted after sec. 1011 was added to the Code and amended in the Tax Reform Act of 1969, Pub. L. 91-172, sec. 201(f), 83 Stat. 564.  Sec. 1.1011-1, Income Tax Regs., was promulgated on Nov. 6, 1957, and has not been changed.  DEFRA sec. 177(d)(2) has not been codified.

the regular adjusted basis rules and any special adjusted basis rules, including DEFRA section 177(d)(2).

Even if the "internal revenue laws" language in the regulation refers only to adjustments to initial cost or other basis, we fail to see how this forecloses any reference to DEFRA section 177(d)(2). In our view, DEFRA section 177(d)(2) is in effect an adjustment to cost basis.[9] Section 1.1011-1, Income Tax Regs., reflects such an interpretation. A reasonable interpretation of adjusted basis under section 1011 incorporates any internal revenue laws which provide for a specific adjusted basis for purposes of determining gain or loss. DEFRA section 177(d)(2)(A) is an internal revenue law, which specifically provides the adjusted basis for purposes of determining any gain from the sale or other disposition of property held by petitioner on January 1, 1985. Section 167(g) requires the use of this adjusted basis for purposes of amortizing petitioner's alleged intangibles.

It also appears that Congress contemplated this result under section 167(g) when it provided an exception in DEFRA section 177

---

[9]Respondent claims that "The plain language of the dual basis rule provides for no such alternatives to § 1016, 1017 or 1018 for the purpose of making basis adjustments. Thus, nothing in * * * [DEFRA] § 177(d) triggers the 'as otherwise specifically provided' clause of the regulation for any purpose." However, DEFRA sec. 177(d)(2) refers to an "adjusted basis" and not an unadjusted basis. An adjusted basis presupposes that the appropriate adjustments have either been made or incorporated.

for purposes of determining petitioner's adjusted basis in tangible depreciable property. That exception is contained in DEFRA section 177(d)(2)(B) and provides:

> (B) Special Rule for Tangible Depreciable Property.--In the case of any tangible property which--
>
> (i) is of a character subject to the allowance for depreciation provided by section 167 of the Internal Revenue Code of 1954, and
>
> (ii) is held by the Federal Home Loan Mortgage Corporation on January 1, 1985,
>
> the adjusted basis of such property shall be equal to the lesser of the basis of such property or the fair market value of such property as of such date.

The conference report accompanying this legislation states with respect to this exception:

> The conference agreement follows the rules of the Senate amendment regarding the basis of Freddie Mac assets held by the corporation on January 1, 1985. However, the conference agreement provides an exception to these general rules in the case of tangible depreciable property held by Freddie Mac on January 1, 1985. For such property, the adjusted basis, for purposes of both gain or loss, is to be equal to the lesser of (1) the regular adjusted basis of the property in the hands of Freddie Mac, or (2) the fair market value of the property as of January 1, 1985. This rule is primarily intended to prevent Freddie Mac from claiming deductions based on pre-1985 depreciation of tangible property (e.g., buildings or office equipment) held by the corporation as of the date of taxability. [H. Conf. Rept. 98-861, supra at 1039-1040, 1984-3 C.B. (Vol. 2) at 293-294.]

In enacting this exception, Congress contemplated and explicitly separated tangible depreciable property from other property, including intangibles, that petitioner held on January 1, 1985.

Congress recognized that DEFRA section 177(d)(2)(A)(ii) would otherwise have provided the adjusted basis for the depreciation (or amortization) of all property under section 167(g). Since the special rule of DEFRA section 177(d)(2)(B) applies only to tangible depreciable property, it follows that DEFRA section 177(d)(2)(A)(ii) provides the adjusted basis for the amortization of all assets other than tangible depreciable property. It also follows that any amortizable intangibles that petitioner held on January 1, 1985, are to be amortized using the basis rule provided in DEFRA section 177(d)(2)(A)(ii).

Respondent contends that Congress did not provide a special exception similar to the exception contained in DEFRA section 177(d)(2)(B) for intangibles, because Congress was not aware that petitioner held any of the alleged intangibles at the time of the enactment of DEFRA. He points out that, since its inception, petitioner has been required by statute to provide its financial statements to Congress, and petitioner has not reported any of the alleged intangibles as assets on its books or on any financial statement. He speculates that while Congress would have been aware of petitioner's tangible depreciable properties from a review of the financial statements, and this might explain why Congress explicitly provided basis rules for depreciation of those properties in DEFRA section 177(d)(2)(B), Congress would not have been aware of any intangibles since none were apparently

listed on the financial statements.  We do not know whether Congress reviewed, or relied upon, petitioner's financial statements in devising the special basis rules under DEFRA section 177(d)(2), or whether Congress was aware or not aware of petitioner's claimed intangibles.  We do know that for purposes of determining adjusted basis, Congress separated tangible depreciable property from other property that petitioner held on January 1, 1985.  We cannot assume that Congress inadvertently failed to include a special exception for intangibles simply because no intangibles appeared as assets on petitioner's financial statements.  That being said, we are left with a special exception to DEFRA section 177(d)(2)(A), which refers only to <u>tangible depreciable property</u> and which by implication indicates that the adjusted basis of intangible property is determined under DEFRA section 177(d)(2)(A).

Respondent argues that we should not infer "an amortization scheme for petitioner's intangibles" on the basis of congressional silence.  However, given the statutory framework for determining adjusted basis, the interplay of DEFRA section 177(d)(2)(A) and section 1011 of the Code, and the reference in section 167(g) to the basis for determining gain as the basis to be used for amortization, we cannot agree that we are inferring petitioner's basis for amortization by reason of congressional silence.

Respondent argues that petitioner's interpretation of DEFRA section 177(d)(2) is inconsistent with fundamental tenets of depreciation in that: (1) Petitioner is claiming amortization using a fair market value basis as of the date it became taxable; and (2) permitting petitioner to amortize its intangibles using a fair market value basis allows petitioner to receive a "double recovery" of costs that it expensed on its books before becoming a taxable entity. But, Congress's selection of the special basis rule contained in DEFRA section 177(d)(2)(A)(ii) is not the first time that Congress selected a higher of fair market value or regular adjusted cost basis for determining adjusted basis. Petitioner's situation is analogous to the determination of the adjusted basis of property held at the time of the enactment of the Federal income tax on March 1, 1913. The basis rules which finally developed for property held on, and acquired before, that date are contained in section 1053,[10] which provides:

SEC. 1053. PROPERTY ACQUIRED BEFORE MARCH 1, 1913.

In the case of property acquired before March 1, 1913, if the basis otherwise determined under this

---

[10]The rule now contained in sec. 1053 has undergone a number of changes since the original enactment of the Federal income tax in 1913. Although taxpayers were originally required to use a fair market value basis for determining any gain from the sale or other disposition of property, see Revenue Act of 1916, ch. 463, sec. 2(c), 39 Stat. 758, Congress eventually settled on a dual-basis rule for determining gain or loss with the basis for determining any gain as the higher of the regular adjusted cost basis or fair market value of the property as of Mar. 1, 1913. See Revenue Act of 1934, ch. 277, sec. 113(a)(14), 48 Stat. 706.

subtitle, adjusted (for the period before March 1, 1913) as provided in section 1016, is less than the fair market value of the property as of March 1, 1913, then the basis for determining gain shall be such fair market value.  * * *[11]

Since section 167(g)[12] requires the same basis used for determining gain to be used as the basis for amortization, it follows that the amortization of an intangible asset held on March 1, 1913, will be based on the fair market value of the asset as of that date if that value is higher than the adjusted

---

[11]The regulations indicate that sec. 1053 and related Code sections provide a dual-basis rule similar to DEFRA sec. 177(d)(2) with respect to property held as of Mar. 1, 1913.  The basis for determining gain is the cost or other basis, adjusted as provided in sec. 1016 and other applicable provisions of ch. 1 of the Code, or its fair market value as of Mar. 1, 1913, whichever is greater.  Sec. 1.1053-1(a), Income Tax Regs.  The basis for determining loss is the basis determined in accordance with pt. II (sec. 1011 and following), subch. O, ch. 1 of the Code, or other applicable provisions of ch. 1 of the Code, without reference to the fair market value as of Mar. 1, 1913. Sec. 1.1053-1(b), Income Tax Regs.

[12]Sec. 167(g) followed a similar historical path as sec. 1053 in its inclusion in the Code.  The rules stated in sec. 167(g) were enacted as sec. 114(a) of the Revenue Act of 1934, ch. 277, 48 Stat. 710.  As its basis for including those rules, Congress stated that "Since in some cases the basis for determining gain differs from the basis for determining loss, it is necessary to specify definitely which of these bases is to be used for depreciation * * * purposes."  H. Rept. 704, 73d Cong., 2d Sess., at 29 (1934), 1939-1 C.B. (Part 2) 554, 575; S. Rept. 558, 73d Cong., 2d Sess., at 36 (1934), 1939-1 C.B. (Part 2) 586, 613.  It is clear that Congress, in enacting this rule, made a conscious choice that in the circumstance of a dual-basis rule, the basis for depreciation (or amortization) is the basis used for determining gain on the sale or other disposition of property.  It is clear that Congress envisioned the type of situation, such as sec. 1053 and DEFRA sec. 177(d)(2), wherein specific legislation provides different bases for purposes of determining gain or loss.

cost basis in the intangible asset.  See sec. 1.1053-1(a), Income Tax Regs.

We fail to see why these same principles are not analogous to petitioner's situation.  Congress provided a special adjusted basis for purposes of determining any gain on petitioner's property held as of January 1, 1985.  Certainly, Congress was aware of the rules that developed from the enactment of the Federal income tax on March 1, 1913, recognized the potential of a similar application with respect to tangible depreciable property, and provided a special exception for such property but did not provide a special exception for intangible property.  This contradicts respondent's suggestion that Congress could not have intended the use of a fair market value basis with respect to petitioner's alleged intangibles.

Respondent suggests that petitioner's situation is more analogous to provisions that pertain to the adjusted basis of assets belonging to previously exempt organizations.  Respondent points to the repeals of tax exemption for the Blue Cross and Blue Shield organizations in the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1012(b), 100 Stat. 2391, and for the Teachers Insurance Annuity Association and College Retirement Equities Fund in the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1042, 111 Stat. 939.  Unlike DEFRA section 177(d)(2), both of those enactments provided a fair market value basis for purposes

of determining <u>both</u> gain and loss.  Also, unlike our situation, Congress expressed its intent in the conference reports accompanying those enactments that the fair market value basis was not to be used for purposes of determining depreciation or for other purposes.  See H. Conf. Rept. 99-841 (Vol. II), at II-349 to II-350 (1986), 1986-3 C.B. (Vol. 4) 1, 349-350; H. Conf. Rept. 105-220, at 566-567 (1997), 1997-4 C.B. (Vol. 2) 1457, 2036-2037.  We cannot discern what considerations went into enacting different basis rules in these enactments or the statements in the conference reports.  However, those rules are confined to the particular taxable entities involved.

Respondent also argues that Congress did not intend to provide a basis for the amortization of petitioner's intangible assets different from the regular adjusted cost basis determined under sections 1011, 1012, and 1016, because Congress explicitly reaffirmed the application of the regular adjusted basis rules in DEFRA section 177(d)(5).  DEFRA section 177(d)(5) provides:  "For purposes of this subsection, the adjusted basis of any asset shall be determined under part II of subchapter O of the Internal Revenue Code of 1954."  Accepting respondent's position with respect to DEFRA section 177(d)(5) would seemingly nullify the specific adjusted basis rules provided in DEFRA section 177(d)(2)(A) and (B).  We do not read this provision as respondent does.  Instead, as we explain in greater detail below,

we read DEFRA section 177(d)(5) to provide the rules for purposes of determining petitioner's regular adjusted cost basis in its assets as of January 1, 1985.  This regular adjusted cost basis is then used in various parts of DEFRA section 177(d)(2) as a comparison to the fair market value of petitioner's assets for purposes of determining which of these two amounts should be used as petitioner's adjusted basis.

Section 1016(a)(3) generally deals with amortization sustained in periods where a taxpayer was not subject to tax. Section 1016(a)(3) provides that proper adjustment in respect of property shall in all cases be made:

> (3) in respect of any period--
>
> (A) before March 1, 1913,
>
> (B) since February 28, 1913, during which such property was held by a person or an organization not subject to income taxation under this chapter or prior income tax laws,
>
> *     *     *     *     *     *     *
>
> for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent sustained;[13]

---

[13]Sec. 1.1016-4, Income Tax Regs., provides:

> (a)  Adjustments to basis must be made for exhaustion, wear and tear, obsolescence, amortization, and depletion to the extent actually sustained in respect of:
>
> (1) Any period before March 1, 1913,
>
> (2) Any period since February 28, 1913,
>
> (continued...)

Respondent speculates that since section 1016(a)(3) provides a mechanism to account for amortization that may have occurred when petitioner was not subject to Federal income taxation, then:

> there would have been no reason for Congress to include some specially tailored provision in * * * [DEFRA] § 177 to account for any depreciation in petitioner's assets that may have occurred before 1985, or after 1985; unless, of course, Congress chose to deviate from the statutory scheme already in place in the Code.  * * * Congress did not so chose [sic] with respect to intangible assets, only tangible assets.

We disagree with respondent's interpretation of the interplay of DEFRA section 177(d)(2) and section 1016(a)(3).

---

[13](...continued)

> during which the property was held by a person or organization not subject to income taxation under chapter 1 of the Code or prior income tax laws,
>
> *     *     *     *     *     *     *
>
> (b)  The amount of the adjustments described in paragraph (a) of this section actually sustained is that amount charged off on the books of the taxpayer where such amount is considered by the Commissioner to be reasonable.  Otherwise the amount actually sustained will be the amount that would have been allowable as a deduction:
>
> > (1) During the period described in paragraph (a)(1) or (2) of this section, had the taxpayer been subject to income tax during those periods, * * *
>
> *     *     *     *     *     *     *
>
> In the case of a taxpayer subject to the adjustment required by subparagraph (1) or (2) of this paragraph, depreciation shall be determined by using the straight line method.

For purposes of determining any gain on the sale or other disposition of property (other than tangible depreciable property), DEFRA section 177(d)(2)(A)(ii) first requires a comparison between petitioner's adjusted cost basis under the general rules and the fair market value of the property as of January 1, 1985.  DEFRA section 177(d)(2)(A)(ii) mandates that for purposes of determining any gain, petitioner's adjusted basis is the higher of the two.  In order to make such a comparison, petitioner's adjusted cost basis under the regular rules must first be determined.  It is clear that this adjusted cost basis is determined under the regular adjusted basis rules of the Code (i.e., sections 1011-1023), which include section 1016(a)(3).  Indeed, DEFRA section 177(d)(5) provides that "For purposes of this subsection, the adjusted basis of any asset shall be determined under part II of subchapter O of the Internal Revenue Code of 1954."[14]  It follows that, for purposes of the DEFRA section 177(d)(2)(A)(ii) comparison, the regular adjusted cost basis of any property held by petitioner would include a section 1016(a)(3) adjustment where appropriate to account for pre-1985 amortization sustained in petitioner's intangibles.  It also follows that the regular adjusted cost basis rules of the Code would apply for purposes of amortization allowed (or allowable)

---

[14]Part II of subch. O of the Code is entitled "Basis Rules of General Application" and consists of secs. 1011 through 1024 (renumbered as secs. 1011 through 1023).

for years after 1984.  See sec. 1016(a)(2).  It does not follow

that section 1016(a)(3) requires a pre-1985 adjustment where the

higher fair market value basis is prescribed under DEFRA section

177(d)(2)(A)(ii).[15]  See sec. 1053 (providing a similar rule for

March 1, 1913 property);[16] Even Realty Co. v. Commissioner, 1

---

[15]See also Staff of Joint Comm. on Taxation, General
Explanation of the Revenue Provisions of the Deficit Reduction
Act of 1984, at 551 (J. Comm. Print 1984), which states:  "For
purposes of determining gain, the basis of any asset held on
January 1, 1985, is to be the higher of (1) the regular adjusted
basis of the asset in the hands of Freddie Mac (as determined
under Code secs. 1011-1023) or (2) the fair market value of the
asset on January 1, 1985."  Of course, the General Explanation is
not prepared by members of Congress, and it is not a part of the
legislative history.  See Allen v. Commissioner, 118 T.C. 1, 14-
15 (2002).  However, the statements in the General Explanation
are consistent with our reading of DEFRA sec. 177(d) and the
legislative history, and it is therefore entitled to respect.
See Intl. Multifoods Corp. v. Commissioner, 108 T.C. 579, 588
(1997).

[16]Sec. 1.1053-1(c), Example, Income Tax Regs., provides:

Example.  (i) On March 1, 1908, a taxpayer
purchased for $100,000, property having a useful life
of 50 years.  Assuming that there were no capital
improvements to the property, the depreciation
sustained on the property before March 1, 1913, was
$10,000 (5 years @ $2,000), so that the original cost
adjusted, as of March 1, 1913, for depreciation
sustained prior to that date is $90,000.  On that date
the property had a fair market value of $94,500 with a
remaining life of 45 years.

(ii) For the purpose of determining gain from the
sale or other disposition of the property on March 1,
1954, the basis of the property is the fair market
value of $94,500 as of March 1, 1913, adjusted for
depreciation allowed or allowable after February 28,
1913, computed on $94,500.  Thus, the substituted
basis, $94,500, is reduced by the depreciation

(continued...)

B.T.A. 355 (1925); <u>Atterbury v. Commissioner</u>, 1 B.T.A. 169 (1924).

Respondent argues that petitioner's claimed amortization of its alleged intangibles at their fair market values as of January 1, 1985, is "precisely contrary to the stated intent of the dual basis rule. This rule was explicitly intended to avoid taking pre-1985 appreciation into account for tax purposes; by amortizing FMVs, petitioner would take such pre-1985 appreciation into account." We disagree. Taking amortization deductions using a fair market value basis does not, in our view, thwart the congressional purpose stated in the legislative history. Indeed, as petitioner suggests, recovering pre-1985 appreciation through amortization assures that pre-1985 appreciation will not be taxed in much the same way as a recovery of basis does when it is used as an offset to gain in the sale or other disposition of the property.[17]

---

[16](...continued)
adjustment from March 1, 1913, to February 28, 1954, in the aggregate of $86,100 (41 years @ $2,100), leaving an adjusted basis for determining gain of $8,400 ($94,500 less $86,100).

[17]We recognize that Congress provided a different rule with respect to tangible depreciable property. Congress did not express any similar concern with respect to any intangible property that petitioner might have held on Jan. 1, 1985. Congress could have provided a similar rule for intangible property, <u>but did not</u>.

Respondent also focuses on the magnitude of the amortization deductions that petitioner claims for 1985 through 1990. Those deductions range from approximately $99 million in 1990 to $117.8 million in 1985. Respondent claims that allowing deductions of this size would be inconsistent with Congress's repeal of petitioner's tax exempt status, since it virtually eliminates petitioner's tax liabilities for the years following January 1, 1985.[18] Respondent relies upon certain revenue estimates contained in Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 555 (J. Comm. Print 1984), as follows: "This provision is estimated to increase fiscal year budget receipts by $67 million in 1985, $109 million in 1986, $142 million in 1987, $185 million in 1988, and $240 million in 1989." Respondent speculates that given the size of the amortization deductions, petitioner's tax liabilities for 1985-90 would fall substantially short of the revenue estimates.

First, we fail to see how the revenue estimates and the comparative reductions in petitioner's tax liabilities are particularly relevant to the question before us, which involves

---

[18]Respondent contends that allowing deductions of this size would have allowed petitioner to maintain its competitive advantage against its chief competitor, the Federal National Mortgage Association (Fannie Mae), a consequence which Congress sought to avoid. See Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 550 (J. Comm. Print 1984).

the interpretation of a particular statute, as well as its interplay with the regular adjusted basis rules in the Code. Second, it would be inappropriate to speculate on the factors that were considered in making such "estimates".[19]  See <u>Fort Howard Corp. v. Commissioner</u>, 103 T.C. 345, 364 (1994) (revenue estimates have little relevance in interpreting a statute).

Respondent also claims that "with respect to the dual basis rule provided in * * * [DEFRA] § 177(d)(2)(A), it is not possible to know which basis rule applies until such time that the asset is disposed of and the sales price is known."  He contends that the basis to be used for purposes of determining any gain "depends entirely on the amount of the sale as well as the fact of the sale", since "Until petitioner's Intangibles are sold or disposed of, and the sales proceeds are known, it will not be known whether there will be any 'gain' at all for purposes of * * * [DEFRA] § 177(d)(2)(A)(ii)."

Petitioner's basis for amortization is not dependent upon whether the particular property is sold or disposed of or upon the amount realized in that transaction.  Indeed, if respondent's argument is correct, the same logic would apply in all cases where Congress has provided a dual-basis rule for determining

---

[19]We point out that we have not yet decided, in these proceedings, the appropriate amount of any deductions to which petitioner is entitled, and, indeed, whether its alleged intangibles are subject to amortization for tax purposes.

gain or loss.  Section 167(g) requires the basis for depreciation or amortization be the same basis as the basis for determining gain.  Since petitioner's adjusted cost basis and fair market value in its assets are ascertainable as of January 1, 1985, and since DEFRA section 177(d)(2)(A)(ii) provides that the adjusted basis for determining gain is the higher of those two amounts, petitioner's adjusted basis for amortization of its intangibles is determinable as of that date.  Any subsequent sale or disposition of those intangibles has no bearing on this comparison.

We hold that petitioner's adjusted basis for purposes of amortizing intangible assets under section 167(g) is the higher of regular adjusted cost basis or fair market value as of January 1, 1985.[20]

An appropriate order

will be issued.

---

[20]We express no opinion at this time whether petitioner actually held the claimed intangible assets on Jan. 1, 1985, their value on that date, or whether such putative assets are amortizable.