T.C. Memo. 2003-298

UNITED STATES TAX COURT

FEDERAL HOME LOAN MORTGAGE CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 3941-99, 15626-99.      Filed October 27, 2003.

    P was originally exempt from Federal income
taxation.  However, on Jan. 1, 1985, P became subject
to taxation under the Deficit Reduction Act of 1984
(DEFRA), Pub. L. 98-369, sec. 177, 98 Stat. 709.
During 1983 and 1984, when it was still exempt from
income tax, P incurred certain costs relating to its
"Freddie Mac" trade name and its trademark "Gnomes".
In its return for 1985, P filed a statement signifying
its election to amortize its 1983 and 1984 trademark
and trade name expenditures under sec. 177, I.R.C.

    <u>Held</u>:  Sec. 177(a), I.R.C., provides an election
to amortize trademark and trade name expenditures over
a period of not less than 60 months for expenditures
"paid or incurred during a taxable year beginning after
December 31, 1955".  P's trademark and trade name
expenditures were not paid or incurred during P's
taxable years because P was exempt from income tax
during those years.  P is not entitled to deductions
under sec. 177, I.R.C.

Robert A. Rudnick, Stephen J. Marzen, James F. Warren, and Neil H. Koslowe, for petitioner.

Gary D. Kallevang, for respondent.

MEMORANDUM OPINION

RUWE, Judge:  Respondent determined deficiencies in petitioner's Federal income taxes in docket No. 3941-99 for 1985 and 1986, as follows:

| Year | Deficiency |
|------|------------|
| 1985 | $36,623,695 |
| 1986 | 40,111,127 |

Petitioner claims overpayments of $9,604,085 for 1985 and $12,418,469 for 1986.

Respondent determined deficiencies in petitioner's Federal income taxes in docket No. 15626-99 for 1987, 1988, 1989, and 1990, as follows:

| Year | Deficiency |
|------|------------|
| 1987 | $26,200,358 |
| 1988 | 13,827,654 |
| 1989 | 6,225,404 |
| 1990 | 23,466,338 |

Petitioner claims overpayments of $57,775,538 for 1987, $28,434,990 for 1988, $32,577,346 for 1989, and $19,504,333 for 1990.

Petitioner and respondent filed cross-motions for partial summary judgment under Rule 121[1] on the issue of whether petitioner's election under section 177 to amortize certain trademark and trade name expenditures, which were incurred in 1983 and 1984 when petitioner was tax exempt, was valid where the election was filed with petitioner's Federal income tax return for its first taxable year commencing January 1, 1985.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner's principal office was located in McLean, Virginia. At all relevant times, petitioner was a corporation managed by a board of directors.

Petitioner was chartered by Congress on July 24, 1970, by the Emergency Home Financing Act of 1970, Pub. L. 91-351, title III (Federal Home Loan Mortgage Corporation Act), 84 Stat. 451. Petitioner was originally exempt from Federal income taxation. However, Congress repealed petitioner's Federal income tax exemption status in the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 177, 98 Stat. 709. Pursuant to this act,

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the taxable years in issue.

petitioner became subject to Federal income taxation, effective January 1, 1985.

During 1983, petitioner incurred expenses in creating the trade name "Freddie Mac".  Petitioner claims that these expenses amount to $33,089.[2]  In 1984, petitioner launched a campaign to develop a new advertising concept to project a distinct identity and increase the market's awareness of petitioner.  Petitioner settled on "Gnomes", 11 tiny elfin cartoon characters representing the legend of the "Gnomes of Zurich", who were supposedly shrewd financial experts.  Petitioner intended the Gnomes to help it present the image of financial prowess, resourcefulness, and ingenuity.  Petitioner contends that during 1984, it developed and registered 14 separate "Gnome" trademarks at a total out-of-pocket cost of $215,349.69.[3]  Whatever costs petitioner incurred for trademarks and trade names in 1983 and 1984, it expensed those costs currently on its books in the respective years 1983 and 1984.

Petitioner claims that under section 177(a), it is entitled to amortization deductions based on trademark and trade name expenditures that it incurred in 1983 and 1984 when it was exempt from income tax.  Section 177(a) provides an election to

---

[2]Respondent disputes petitioner's substantiation of these expenses.

[3]Respondent also disputes petitioner's substantiation of this cost.

amortize, over a period of not less than 60 months, trademark and trade name expenditures paid or incurred during a taxable year beginning after December 31, 1955. In order to amortize its claimed trademark and trade name expenditures, petitioner was required under section 177(c) and section 1.177-1(c), Income Tax Regs., to attach a statement, signifying its election to amortize, to its return for the taxable year in which the expenses were incurred. Petitioner attached a statement to its return for the year 1985, which petitioner claims meets the requirements in the regulations. Petitioner claims that on page 34, statement 17 of its original income tax return for the taxable year 1985, it elected to defer and amortize its trademark and trade name expenditures over a period of 60 months, starting on January 1, 1983, in the case of the "Freddie Mac" item, and on January 1, 1984, in the case of the "Gnome" items. Petitioner deducted $49,688 in respect of trademark and trade name expenditures on its income tax returns for each of the taxable years 1985 through 1987 and $43,070 in the taxable year 1988.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. FPL Group, Inc. v. Commissioner, 116 T.C. 73, 74 (2001). Either party may move for summary judgment upon all or any part of the legal issues in controversy. Rule 121(a); FPL Group, Inc. v. Commissioner, supra

at 74.  A decision will be rendered on a motion for partial

summary judgment if the pleadings, answers to interrogatories,

depositions, admissions, and other acceptable materials, together

with the affidavits, if any, show that there is no genuine issue

as to any material fact and that a decision may be rendered as a

matter of law.  Rule 121(b); Elec. Arts, Inc. v. Commissioner,

118 T.C. 226, 238 (2002).  The moving party has the burden of

proving that no genuine issue of material fact exists, and the

moving party is entitled to judgment as a matter of law.

Rauenhorst v. Commissioner, 119 T.C. 157, 162 (2002).

Petitioner claims that under section 177(a) it is entitled

to deductions in 1985, 1986, and 1987 for part of the trademark

and trade name expenditures that it incurred during 1983 and 1984

when it was exempt from income tax.  Section 177(a)[4] in effect

for the taxable years at issue provided:

> SEC. 177(a).  Election to Amortize.--Any trademark
> or trade name expenditure paid or incurred during a
> taxable year beginning after December 31, 1955, may, at
> the election of the taxpayer (made in accordance with
> regulations prescribed by the Secretary), be treated as
> a deferred expense.  In computing taxable income, all
> expenditures paid or incurred during the taxable year
> which are so treated shall be allowed as a deduction
> ratably over such period of not less than 60 months
> (beginning with the first month in such taxable year)
> as may be selected by the taxpayer in making such
> election.  The expenditures so treated are expenditures
> properly chargeable to capital account for purposes of

---

[4]Sec. 177(a) was repealed by the Tax Reform Act of 1986,
Pub. L. 99-514, sec. 241(a), 100 Stat. 2181, effective for
expenditures paid or incurred after Dec. 31, 1986.

section 1016(a)(1)(relating to adjustments to basis of property).

Respondent contends that petitioner cannot meet the requirements of section 177(a) because it was not taxable in 1983 and 1984 when its expenditures were incurred. Neither party cites court opinions supporting its respective interpretations of section 177, and the issue appears to be one of first impression.

It is a well-settled principle that tax deductions are a matter of legislative grace, and taxpayers must show that they come squarely within the terms of the law conferring the benefit sought. See Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933); <u>Wilkins v. Commissioner</u>, 120 T.C. 109, 112 (2003). Further, in interpreting a statute, as in the instant cases, we start as always with the language of the statute itself. <u>Consumer Prod. Safety Commn. v. GTE Sylvania, Inc.</u>, 447 U.S. 102, 108 (1980); <u>Fed. Home Loan Mortgage Corp. v. Commissioner</u>, 121 T.C. ___, ___ (Sept. 4, 2003). We look to the legislative history primarily to learn the purpose of the statute and to resolve any ambiguity in the words contained in the text. <u>Fed. Home Loan Mortgage Corp. v. Commissioner</u>, <u>supra</u> at ___; <u>Wells Fargo & Co. v. Commissioner</u>, 120 T.C. 69, 89 (2003); <u>Allen v. Commissioner</u>, 118 T.C. 1, 7 (2002). If the language of the statute is plain, clear, and unambiguous, we generally apply it according to its terms.

United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989); Fed. Home Loan Mortgage Corp. v. Commissioner, supra at ___; Burke v. Commissioner, 105 T.C. 41, 59 (1995). If the statute is ambiguous or silent, we may look to the statute's legislative history to determine congressional intent. Burlington N. R.R. v. Okla. Tax Commn., 481 U.S. 454, 461 (1987); Fed. Home Loan Mortgage Corp. v. Commissioner, supra at ___; Ewing v. Commissioner, 118 T.C. 494, 503 (2002).

Section 177 literally requires that the item to be amortized be an "expenditure paid or incurred during a taxable year". It is clear that petitioner was not taxable in 1983 and 1984, when the expenditures were made, and that those years were not taxable years with respect to petitioner. Indeed, petitioner's first taxable year was 1985.

Section 177(a) and the regulations thereunder provide that deductions be allowed ratably over a period of not less than 60 months beginning with the first month of the taxable year in which the expenditure is paid or incurred. Section 1.177-1(a)(2), Income Tax Regs. provides:

> (2) The number of continuous months selected by the taxpayer may be equal to or greater, but not less, than 60, but in any event the deduction must begin with the first month of the taxable year in which the expenditure is paid or incurred. The number of months selected by the taxpayer at the time he makes the election may not be subsequently changed but shall be adhered to in computing taxable income for the taxable year for which the election is made and all subsequent taxable years.

Petitioner computed its amortization deductions using a 60-month amortization schedule commencing in 1983 and 1984, the years in which it incurred the trademark and trade name expenditures.  But, petitioner did not, and could not, claim deductions for any "amortization" in 1983 and 1984 with respect to its trademarks and trade name costs because it was tax exempt during those years.  Simply put, petitioner cannot comply with the literal requirements of section 177(a) and section 1.177-1(a)(2), Income Tax Regs.

Our reading of section 177(a) and the regulations thereunder is also supported by the election rules specified in section 177(c).  Section 177(c) provides:

> SEC. 177(c).  Time for and Scope of Election.--The election provided by subsection (a) shall be made within the time prescribed by law (including extensions thereof) for filing the return for the taxable year during which the expenditure is paid or incurred.  The period selected by the taxpayer under subsection (a) with respect to the expenditures paid or incurred during the taxable year which are treated as deferred expenses shall be adhered to in computing his taxable income for the taxable year for which the election is made and all subsequent years.

Section 1.177-1(c), Income Tax Regs., which interprets section 177(c), provides:

> (c) <u>Time and manner of making election</u>.  (1) A taxpayer who elects to defer and amortize any trademark or trade name expenditure paid or incurred during a taxable year beginning after December 31, 1955, shall, within the time prescribed by law (including extensions thereof) for filing his income tax return for that year, attach to his income tax return a statement

signifying his election under section 177 and setting forth the following:

       (i) Name and address of the taxpayer, and the taxable year involved;

       (ii) An identification of the character and amount of each expenditure to which the election applies and the number of continuous months (not less than 60) during which the expenditures are to be ratably deducted; and

       (iii) A declaration by the taxpayer that he will make an accounting segregation on his books and records of the trademark and trade name expenditures for which the election has been made, sufficient to permit an identification of the character and amount of each such expenditure and the amortization period selected for each expenditure.

       (2) The provisions of subparagraph (1) of this paragraph shall apply to income tax returns and statements required to be filed after May 4, 1960. Elections properly made in accordance with the provisions of Treasury Decision 6209, approved October 26, 1956 (21 F. R. 8319, C. B. 1956-2, 1370), continue in effect.

The fact that petitioner's election must be made in the tax return for the taxable year in which the expenditures were incurred supports our conclusion that section 177(a) applies only to expenditures made during a taxable year.

Petitioner argues that its election was timely since it had no prescribed due date for any income tax returns for 1983 and 1984, and its first opportunity to file an election under section 177(a) occurred in 1985 when petitioner first became subject to Federal income tax.  If timeliness of the election were the only

issue we might agree.[5]  But the issue here is whether petitioner meets the substantive requirements of section 177(a).

Petitioner argues that the language in section 177(a), referring to a taxable year, must be read in its full context. Petitioner points to the following language in section 177(a): "Any trademark or trade name expenditure paid or incurred during a taxable year beginning after December 31, 1955". (Emphasis added.)  Petitioner argues that this language merely establishes the effective date of section 177.  See Act of June 29, 1956, ch. 464, sec. 4, 70 Stat. 406.  We disagree.  While the above quoted language certainly specifies that section 177 applies only to expenditures made after December 31, 1955, it also specifies that qualifying expenditures be paid or incurred during a "taxable year" after that date.  We cannot simply read this requirement out of the statute.  Petitioner cites no authority for doing so, and there is nothing in the legislative history indicating that Congress intended such a limited application.

---

[5]See Dougherty v. Commissioner, 60 T.C. 917 (1973) (election held effective where filed in response to the Commissioner's indication of intention to include additional amount in the taxpayer's return years after time prescribed in regulations for making the election); see also Roy H. Park Broad. v. Commissioner, 78 T.C. 1093 (1982) (election filed in amended returns more than 4 years after filing of original return allowed where taxpayer was unable to secure required certification at time original return filed); Bayley v. Commissioner, 35 T.C. 288 (1960) (election to compute gain on installment basis which was made in amended petition to this Court held effective where taxpayer treated gain in original return as deferred under sec. 1034).

Indeed, the legislative history of section 177 indicates that Congress was trying to help smaller companies qualify for a tax deduction, for what would otherwise be nondeductible expenditures, because larger companies were already deducting these expenditures in the form of salaries paid to their employees who performed work regarding trademarks and trade names.[6]  Congress believed that this disparity in tax treatment resulted in a "hardship" on small companies that were not able to deduct these expenses in computing their taxable income.  The references in section 177 to expenditures "paid or incurred during a taxable year" are consistent with Congress's objective to establish parity between the way large and small companies compute their taxable income.  Nothing in the statute or

[6]The legislative history provides:

> Under present law, expenditures paid or incurred by smaller companies in connection with trademarks and trade names, such as legal fees, are not deductible but must be capitalized.  Moreover, such expenditures ordinarily are not amortizable over any period of time since the useful life of most trademarks and trade names is indefinite and not ascertainable.  However, certain larger corporations are in a position to hire their own legal staffs to handle such matters.  Because of difficulties of identification, these large corporations deduct, in some instances, compensation paid to their legal staffs for performing the same functions.  Smaller companies, however, cannot afford to maintain their own legal staffs but must acquire outside counsel to perform their legal work.  By this amendment your committee intends to eliminate an existing hardship in the case of small companies.  [S. Rept. 1941, 84th Cong., 2d Sess. (1956), 1956-2 C.B. 1227, 1232.]

legislative history indicates that Congress wanted to extend this type of deduction to expenditures that were incurred during a year when the taxpayer was already exempt from income tax.

We hold that petitioner is not entitled to the claimed amortization deductions under section 177(a).

<u>An appropriate order</u>

<u>will be issued</u>.