131 T.C. No. 19


UNITED STATES TAX COURT


MERRILL LYNCH & CO., INC. & SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket No. 18170-98.                    Filed December 30, 2008.


        MP decided to sell its wholly owned subsidiary,
MLCR but wanted to retain a portion of MLCR's assets
within MP's affiliated group.  Before its sale, MLCR
sold the stock in certain of its subsidiaries (issuing
corporations) to brother-sister corporations in MP's
affiliated group (acquiring corporations).  We held
that these cross-chain sales, along with the subsequent
sale of MLCR outside the affiliated group, were made
pursuant to a firm and fixed plan to completely
terminate MLCR's ownership interests in the issuing
corporations.  Applying sec. 304, I.R.C., we held that
the cross-chain sales qualified as redemptions in
complete termination of MLCR's interest in the issuing
corporations under sec. 302, I.R.C., and, as such, must

---

[*]This Opinion supplements our previous Opinion, <u>Merrill
Lynch & Co. & Subs. v. Commissioner</u>, 120 T.C. 12 (2003), affd. in
part and remanded 386 F.3d 464 (2d Cir. 2004).

be taxed as distributions in exchange for stock instead of as dividends under sec. 301, I.R.C. The Court of Appeals for the Second Circuit affirmed our holding in part but remanded for us to consider P's argument, made for the first time on appeal, that the sec. 302(b)(3), I.R.C., test for complete termination required consideration of MP's ownership interest in the issuing corporations. MP asserts that it is entitled to dividend treatment because neither the cross-chain sales nor the later sale of MLCR reduced the 100-percent constructive ownership interest attributed to MP in the issuing corporations.

Held: Under sec. 304, I.R.C., MLCR is the only shareholder whose interest in the issuing corporations must be tested pursuant to sec. 302, I.R.C. Because MLCR's interest was completely terminated, the redemption was properly treated as a distribution in exchange for stock under sec. 302(a), I.R.C.

Kenneth W. Gideon and Martin D. Ginsburg, for petitioner.

Carmen M. Baerga, Jill A. Frisch, and Lyle Press, for respondent.

SUPPLEMENTAL OPINION

MARVEL, Judge: This case is before the Court on remand from the Court of Appeals for the Second Circuit. Merrill Lynch & Co. & Subs. v. Commissioner, 386 F.3d 464 (2d Cir. 2004), affg. in part and remanding 120 T.C. 12 (2003). In our prior Opinion, we found that the cross-chain sales of subsidiary stock between brother-sister corporations in an affiliated group[1] were made

---

[1]The affiliated group filed a consolidated Federal income tax return for each of the years at issue.

pursuant to a firm and fixed plan to completely terminate the cross-chain selling corporation's actual and constructive ownership of the subsidiaries and that the cross-chain sales must be integrated with the later sale of the cross-chain seller outside the affiliated group. Applying section 304,[2] we held that the cross-chain sales qualified as redemptions in complete termination of the selling shareholder corporation's interest in the subsidiaries and must be taxed as distributions in exchange for stock under section 302(a) and (b)(3) rather than as dividends under section 301. The Court of Appeals affirmed our decision in part but remanded the case for our consideration of an argument petitioner advanced for the first time on appeal.[3]

## Background

We adopt the findings of fact in Merrill Lynch & Co. & Subs. v. Commissioner, 120 T.C. 12 (2003) (Merrill Lynch I), as modified by the Court of Appeals. For convenience and clarity, we repeat below the previously found facts necessary for the disposition of this case.

Merrill Lynch & Co., Inc. (Merrill Parent), is a corporation organized under Delaware law and is the parent corporation of an affiliated group of corporations that filed consolidated Federal

[2]All section references are to the Internal Revenue Code.

[3]Petitioner did not appeal our decision with respect to the 1986 cross-chain sale of Merlease Leasing Corp. and the 1987 cross-chain sale of Merrill Lynch Vessel Leasing Corp.

income tax returns for the taxable years at issue. Merrill Parent, through its subsidiaries and affiliates, provides investment, financing, insurance, leasing, and related services to clients. Merrill Parent's wholly owned subsidiaries included Merrill Lynch Capital Resources, Inc. (ML Capital Resources), Merrill Lynch Realty, Inc. (ML Realty), Merrill Lynch Asset Management, Inc. (ML Asset Management), and Merrill, Lynch, Pierce, Fenner & Smith, Inc. (MLPFS).

ML Capital Resources was engaged in the business of arranging equipment leasing transactions between third parties and also owned various types of equipment and other tangible personal property, which it leased to third parties. In addition, ML Capital Resources owned the stock of several subsidiary corporations that were engaged in the business of arranging equity and debt financing for small and midsize companies. Merrill Parent wanted to sell a portion of ML Capital Resources' business but did not want certain of ML Capital Resources' nonleasing assets to leave the affiliated group. As a result, Merrill Parent decided that before it sold ML Capital Resources, ML Capital Resources would sell to other corporations in the affiliated group the stock of its subsidiary corporations that were engaged in lending and financing activities or that owned other assets and businesses that were not related to its consumer leasing operations.

During February and March 1987 Merrill Parent prepared a preliminary offering memorandum regarding the sale of ML Capital Resources, contacted various prospective buyers, and established the procedures for bidding on ML Capital Resources. On March 30, 1987, ML Capital Resources sold all of the stock in five of its wholly owned subsidiaries to ML Realty for $53,972,607 and sold all of the stock in another of its wholly owned subsidiaries to ML Asset Management for an initial purchase price of $160 million.[4] On April 3, 1987, ML Capital Resources sold all of its stock in a seventh wholly owned subsidiary to MLPFS for $119,819,690.[5] These stock sales between the brother-sister corporations constitute the cross-chain sales at issue in this case. The parties agree that these sales were section 304 transactions.

On June 25, 1987, Merrill Parent, Merrill Lynch Consumer Markets Holdings, Inc. (Consumer Markets), and ML Capital Resources entered into an agreement with GATX Leasing Corp., acting on behalf of itself and BCE Development, Inc. (collectively GATX/BCE), for the purchase and sale of the stock

[4]The purchase price was to be adjusted as soon as practicable by a subsequent agreement reflecting the actual fair market value of the shares as of Mar. 30, 1987.

[5]In addition, by resolution dated Apr. 8, 1987, Merrill Parent's board of directors approved the formation of Merrill Lynch Consumer Markets Holdings, Inc. (Consumer Markets), and the contribution of all of ML Capital Resources' capital stock to Consumer Markets.

of ML Capital Resources.  The purchase price of the ML Capital
Resources stock was $57,363,817.[6]

On its consolidated Federal income tax return for the
taxable year ended December 25, 1987, petitioner claimed a long-
term capital loss of $466,985,176 from the sale of ML Capital
Resources stock.  On the basis of its interpretation of sections
302 and 304, petitioner treated the proceeds of the cross-chain
stock sales as dividend payments to ML Capital Resources, which
increased ML Capital Resources' earnings and profits.  Petitioner
took the position that under the consolidated return regulations
then in effect, the increase in ML Capital Resources' earnings
and profits generated a corresponding increase in the basis of
the ML Capital Resources stock held by Consumer Markets.  See
secs. 1.1502-32(a) and 1.1502-33, Income Tax Regs.  As a result
of this asserted increase, petitioner claimed that it recognized
a loss on the sale of the stock of ML Capital Resources outside
the affiliated group.

Respondent mailed a timely notice of deficiency to
petitioner in which respondent, among other things, decreased the
long-term capital loss petitioner reported on the 1987 sale of
the stock of ML Capital Resources to GATX/BCE on the ground that

---

[6]In Merrill Lynch I we did not make a finding regarding the
total purchase price of the ML Capital Resources stock.  The
purchase price shown above is derived from the opinion of the
Court of Appeals.  See Merrill Lynch & Co. & Subs. v.
Commissioner, 386 F.3d at 467.

Consumer Markets' basis in the ML Capital Resources stock was overstated by $328,826,143, which represents the aggregate purchase price of the eight subsidiaries sold in the 1987 cross-chain sales.[7]

The issue for decision in Merrill Lynch I was whether the deemed section 304 redemptions in the form of the cross-chain stock sales must be integrated with the later sale of the cross-chain seller, ML Capital Resources, outside the affiliated group and treated as a redemption in complete termination under section 302(a) and (b)(3) or whether the deemed section 304 redemptions were distributions of property taxable as dividends under section 301. We found that on the dates of the cross-chain sales, petitioner had agreed upon and had begun to implement a firm and fixed plan to completely terminate the ownership interest of ML Capital Resources in the subsidiary corporations whose stock was sold cross-chain. Consequently, we held that the cross-chain sales, when integrated with the sale of ML Capital Resources' stock, resulted in a complete termination under section 302(b)(3) of the actual and constructive ownership interest of ML Capital Resources in the subsidiaries purchased in the cross-chain sales. Accordingly, we concluded that the proceeds of the cross-chain

---

[7]The proper tax treatment of one of the eight 1987 cross-chain sales is not at issue in this remand because petitioner did not appeal it.

sales must be treated as a payment in exchange for stock under section 302(a) rather than as a dividend under section 301.

The Court of Appeals adopted the firm and fixed plan test as the appropriate method for determining whether two transactions conducted at different times may be integrated for the purposes of section 302(b)(3) and affirmed our application of that test to the cross-chain sales and subsequent sale of ML Capital Resources. However, the Court of Appeals remanded the case for consideration of an alternative argument petitioner advanced for the first time on appeal. Merrill Lynch & Co. & Subs. v. Commissioner, 386 F.3d at 475.

On appeal petitioner argued that the proceeds of the cross-chain sales must be treated as a dividend under section 301, even if it is found that the actual and constructive ownership interest of ML Capital Resources in the purchased subsidiary corporations was completely terminated when it was sold outside the affiliated group, because Merrill Parent retained a constructive ownership interest in the purchased subsidiaries after the sale of ML Capital Resources for purposes of section 302(b)(3). Id. at 474-475.

## Discussion

Section 304(a)(1) recharacterizes the sale proceeds of subsidiary stock sold by one corporation to another of its commonly controlled corporations as a distribution in redemption

of the acquiring corporation's stock and requires that the tax consequences of the distribution be determined under sections 301 and 302. Under section 302(a), a redemption of stock is treated as a distribution in exchange for stock if it meets any of the tests provided in section 302(b). If none of the section 302(b) tests is met, the redemption is treated as a dividend under section 301. Sec. 302(d). The termination of interest test of section 302(b)(3) mandates exchange treatment "if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder." In the application of this and all other tests under section 302(b), section 304(b)(1) requires that any determination as to whether the acquisition is to be treated as a distribution in exchange for stock must be made by reference to the stock of the issuing corporation.[8]

The parties disagree on whether for purposes of section 304 Merrill Parent as well as ML Capital Resources is considered a shareholder whose continuing interest in the issuing corporations must be tested under section 302(b)(3). On appeal petitioner contended for the first time that because Merrill Parent's ownership interest in the issuing corporations was not completely terminated within the meaning of section 302(b)(3) by the sale of

---

[8]For purposes of sec. 304 in this case, the subsidiaries whose stock was sold cross-chain are considered the issuing corporations, and the purchasing corporations, ML Realty, ML Asset Management, and MLPFS, are considered the acquiring corporations.

ML Capital Resources' stock outside the affiliated group, petitioner has properly reported the proceeds of the sale as dividends. Petitioner makes the same argument on remand. Petitioner's argument rests on the following: (1) Immediately before the cross-chain sales, the acquiring corporations were wholly owned subsidiaries of Merrill Parent; (2) under the attribution rules of section 318, ownership of the issuing corporations was also attributed to Merrill Parent through its ownership of ML Capital Resources; and (3) after the sale of ML Capital Resources, Merrill Parent continued constructively to own 100 percent of the stock of the issuing corporations through its ownership of the acquiring corporations.

Petitioner relies on section 304(a)(1) to support its position that the section 302(b)(3) termination of interest test applies to Merrill Parent's constructive ownership of the issuing corporations' stock. According to petitioner, the specific reference in section 304(a)(1)(B) to "person (or persons) so in control" requires the interests of all persons in control to be considered in applying section 302(b)(3). Petitioner asserts that under section 318, Merrill Parent constructively owned 100 percent of the stock of the issuing corporations both before and after the cross-chain sales. Sec. 304(c)(3). Petitioner concludes that because the sale of ML Capital Resources did not affect Merrill Parent's constructive ownership of the stock of

the issuing corporations, the complete termination required under section 302(b)(3) did not occur, and the proceeds of the cross-chain sales were properly characterized as dividends.

Respondent contends that ML Capital Resources is the shareholder whose interest in the issuing corporations must be tested under section 302(b)(3) and that because Merrill Parent's sale of the stock of ML Capital Resources must be integrated with the cross-chain sales of the stock of the issuing corporations, the interest of ML Capital Resources in the issuing corporations was completely terminated under section 302(b)(3). To support his position, respondent argues that section 304(a)(1) explicitly refers to the corporation that receives property in exchange for its stock in the issuing corporation. Respondent also asserts that the regulations promulgated under section 304 clearly identify the interest of the transferor-shareholder as the relevant interest to be examined under the section 302(b)(3) test.

We must decide, therefore, whether Merrill Parent's continuing constructive ownership interest in the issuing corporations after the cross-chain sales must be taken into account in analyzing the tax consequences under sections 304(a)(1) and 302(b)(3) of ML Capital Resources' 1987 sale of stock in the issuing corporations to the acquiring corporations. In making this determination, we start by interpreting section

304(a)(1).  In interpreting a statute, we begin with the language of the statute itself.  <u>Consumer Prod. Safety Commn. v. GTE Sylvania, Inc.</u>, 447 U.S. 102, 108 (1980); <u>Fed. Home Loan Mortgage Corp. v. Commissioner</u>, 121 T.C. 129, 134 (2003).  If the language of the statute is plain and unambiguous, we generally apply the statute in accordance with its terms.  <u>Fed. Home Loan Mortgage Corp. v. Commissioner</u>, <u>supra</u> at 134; <u>Wells Fargo & Co. v. Commissioner</u>, 120 T.C. 69, 89 (2003).  Whether the statute is ambiguous is determined by reference to the language of the statute, the specific context in which that language is used, and the broader context of the statute as a whole.  <u>Wells Fargo & Co. v. Commissioner</u>, <u>supra</u> at 89.  If the statute is ambiguous or silent, we may look to the statute's legislative history to determine congressional intent and to resolve any ambiguity.  <u>Fed. Home Loan Mortgage Corp. v. Commissioner</u>, <u>supra</u> at 134; <u>Wells Fargo & Co. v. Commissioner</u>, <u>supra</u> at 89.

Section 304 provides in relevant part as follows:

SEC. 304.  REDEMPTION THROUGH USE OF RELATED CORPORATIONS.

(a)  Treatment of Certain Stock Purchases.--

(1)  Acquisition by related corporation (other than subsidiary).--For purposes of sections 302 and 303, if--

(A)  one or more persons are in control of each of two corporations, and

(B)  in return for property, one of the corporations acquires stock in the other

corporation from the person (or persons) so in control,

then (unless paragraph (2) applies) such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock. To the extent that such distribution is treated as a distribution to which section 301 applies, the stock so acquired shall be treated as having been transferred by the person from whom acquired and as having been received by the corporation acquiring it, as a contribution to the capital of such corporation.

      *      *      *      *      *      *      *

(c)  Control.--

     (1)  In general.--For purposes of this section, control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote, or at least 50 percent of the total value of shares of all classes of stock. If a person (or persons) is in control (within the meaning of the preceding sentence) of a corporation which in turn owns at least 50 percent of the total combined voting power of all stock entitled to vote of another corporation, or owns at least 50 percent of the total value of the shares of all classes of stock of another corporation, then such person (or persons) shall be treated as in control of such other corporation.

      *      *      *      *      *      *      *

     (3)  Constructive ownership.--

          (A)  In general.--Section 318(a) (relating to constructive ownership of stock) shall apply for purposes of determining control under this section.

While section 304(a)(1)(A) refers to "one or more persons" and

section 304(a)(1)(B) refers to "person (or persons) so in

control", section 304(a)(1) makes clear that the person or persons in control must also be transferors of issuing corporation stock who receive property in exchange for their transferred stock.  Accordingly, under section 304, the persons in control must <u>actually</u> receive property in exchange for the transfer of their issuing corporation stock to warrant the redemption analysis in section 302.  The references to "persons" in section 304(a), when read in conjunction with section 304(c)(1) and (3), merely indicate that the interests of more than one person may be combined through attribution of stock ownership in order to meet the requisite control required for the application of section 304(a)(1).[9]  The constructive ownership rules of section 318 are thus independent of the transfer and receipt requirements of section 304(a).

Because sections 302 and 304 operate to determine the tax consequences to the <u>recipient</u> of a corporate distribution,[10] it necessarily follows that the rules set forth in sections 302 and 304 apply only to the shareholder who, in exchange for stock, actually receives the proceeds of a cross-chain sale.  The position that the section 302(b) tests may be applied to a

---

[9]For purposes of the Internal Revenue Code, unless otherwise indicated, "The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation."  Sec. 7701(a)(1).

[10]Secs. 302 and 304 are in subpt. A, entitled "Effects on Recipients", of subch. C, pt. I.

shareholder who indirectly or constructively holds stock but has neither transferred any stock nor received the proceeds of the stock sale cannot be reconciled with the language and structure of section 304(a)(1).

The regulations promulgated under section 304 also confirm that the section 302(b) tests apply only to the person or persons who actually transfer stock in the issuing corporation to the acquiring corporation in consideration for property.[11]  Section 1.304-2(a), Income Tax Regs., provides as follows:

> (a) If a corporation, in return for property, acquires stock of another corporation from one or more persons, and the person or persons from whom the stock was acquired were in control of both such corporations before the acquisition, then such property shall be treated as received in redemption of stock of the acquiring corporation.  * * *  As to each person transferring stock, the amount received shall be treated as a distribution of property under section 302(d), unless as to such person such amount is to be treated as received in exchange for the stock under the terms of section 302(a) or section 303.  * * * [Emphasis added.]

Although the regulation acknowledges that more than one person may be in control of both corporations within the meaning of section 304, it clearly recognizes that the person or persons in control must also have transferred stock in exchange for property.  According to the regulation, only a person who has transferred stock in exchange for property is subject to the provisions of section 302.  Section 1.304-2(c), Example (4),

---

[11]In this context property includes cash.  Sec. 317(a).

Income Tax Regs., illustrates this distinction as follows:

> Corporation X and corporation Y each have outstanding
> 100 shares of common stock. H, an individual, W, his
> wife, S, his son, and G, his grandson, each own 25
> shares of stock of each corporation. H sells all of
> his 25 shares of stock of corporation X to corporation
> Y. Since both before and after the transaction H owned
> directly and constructively 100 percent of the stock of
> corporation X, and assuming that section 302(b)(1) is
> not applicable, the amount received by him for his
> stock of corporation X is treated as a dividend to him
> to the extent of the earnings and profits of
> corporation Y.

In the example more than one person was considered to be in control of each corporation and their interests were aggregated to determine control for purposes of section 304, but the section 302(b) tests were applied only to the shareholder who actually transferred stock to the commonly controlled corporation in exchange for property. Nothing in the statute or the regulations "commands" that the interests of <u>all</u> persons in control be tested under sections 304(a)(1) and 302(b), as petitioner contends.

ML Capital Resources owned 100 percent of the stock of the issuing corporations before the cross-chain sales, thereby satisfying the control requirement set forth in section 304(a)(1). As a result, we need not look beyond ML Capital Resources' ownership of the issuing corporations to consider any additional persons who may have an indirect interest in the issuing corporations under the section 318 attribution rules. ML Capital Resources was the only "person" who transferred any stock to the acquiring corporations in the cross-chain sales, and ML

Capital Resources was the only shareholder that received property from the acquiring corporations in exchange for stock in the issuing corporations. Consequently, ML Capital Resources is the only shareholder whose interest in the issuing corporations must be tested under the provisions of section 302(b)(3). Because the interest of ML Capital Resources in the issuing corporations was completely terminated upon its sale outside of the affiliated group, the redemption shall be treated as a distribution in exchange for stock. Secs. 304(a)(1), 302(b)(3).

Petitioner presents various hypothetical situations to demonstrate the unintended results that the adoption of respondent's position might have produced under earlier versions of section 304. These examples, however, assume facts that are not present in this case and rely on statutory provisions that are no longer in effect. Consequently, we do not address the hypothetical situations discussed in petitioner's brief. Moreover, we have recognized that "a statute cannot be drafted with sufficient particularity to fully accomplish its purposes while avoiding every potential abuse". Van Raden v. Commissioner, 71 T.C. 1083, 1116 (1979) (Wilbur J., dissenting), affd. 650 F.2d 1046 (9th Cir. 1981). We are required to review and interpret sections 304 and 302 as in effect for 1987, the year of the contested cross-chain sales. Hypotheticals aside, we are satisfied that the language and structure of sections 304 and 302 mandate our holding herein.

To reflect the foregoing,

                    <u>Decision will be entered in</u>
<u>accordance with the mandate of the</u>
<u>Court of Appeals for the Second</u>
<u>Circuit</u>.